IN RE JESSICA M. ET AL.*
(AC 22373)

Mihalakos, Bishop and Daly, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued March 22—officially released August 6, 2002

*Eugene P. Falco*, for the appellant (petitioner).

*Kenneth A. Graham*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (commissioner of social services).

*Cecilia Buck-Taylor*, for the minor children.

*Opinion*

MIHALAKOS, J. In this action to terminate her parental rights, the petitioner mother appeals from the judgment of the trial court denying her petitions to terminate her parental rights in regard to her three minor children. The court rendered the judgment after a trial de novo

in relation to an appeal by the commissioner of social services (commissioner) from the Probate Court's decree granting termination. On appeal to this court, the petitioner claims that the trial court improperly (1) exercised its subject matter jurisdiction when it determined that the commissioner had standing to pursue an appeal from a Probate Court decree and proceeded to trial while related proceedings were pending in the Waterbury Probate Court, and (2) denied her petitions to terminate her parental rights despite her consent. We affirm the judgment of the trial court.

The record reveals the following relevant facts and intricate procedural history. On June 7, 1999, the petitioner filed three applications with the New Milford Probate Court seeking to terminate her parental rights with respect to her three minor children on the grounds of consent and abandonment. The petitioner's children are the product of her tumultuous, abusive and violent relationship with the children's father that began in 1988. The children's father has been arrested for domestic violence incidents involving alcohol on several occasions. The three children were born between 1989 and 1992. From July, 1991, to July, 1993, and again from September, 1994, to January, 1995, the petitioner received monthly state assistance from department of social services (social services) to help care for her children. The petitioner received that assistance under both the state's aid to families with dependent children program and its temporary assistance for needy families program, otherwise known as AFDC and TANF or TFA benefits, respectively. To maintain her eligibility during the first period of assistance, the petitioner averred that the children's father did not live with the family although he, in fact, did at that time.

Following an episode of domestic violence in 1993, where the father kicked the petitioner and broke her ribs, the petitioner separated herself and her children

from the father. In May, 1995, she contacted the department of children and families and agreed to place the children in foster care for a period of sixty days or less. The department of children and families returned the children to the petitioner on June 20, 1995, but she then voluntarily turned the children over to their father and his family. After some initial visits with her children, the petitioner stopped visiting them, despite having the ability and the legal right to do so. Until the date of trial, the petitioner had not seen her children for more than six years.

In March, 1999, the father placed the children on the state medical assistance program and asked social services to seek child support from the petitioner. In August, 1999, the father secured full financial assistance for the children from social services. Pursuant to the father's wishes, social services sought child support from the petitioner, who then declared her intent to petition for termination of her parental rights so that social services would not pursue child support from her. In response, social services initiated a support action against the petitioner in May, 1999, and soon discovered that on June 7, 1999, she had filed applications to terminate her parental rights in the New Milford Probate Court.

At about the same time, a family support magistrate issued a temporary child support order against the petitioner on June 2, 1999, and modified that order on August 18, 1999. On December 15, 1999, the petitioner, who was represented by counsel, agreed to permanent child support orders based on her net weekly earnings of $242 per week in "current" support and $18 per week to be paid toward an arrearage. Since the date of those orders, the petitioner has made only four payments, all toward her arrearage.

On March 29, 2000, the children's father and paternal aunt petitioned the Waterbury Probate Court for guard-

ianship of the children. Although the petitioner was notified of those proceedings, she did not attend, and the court awarded temporary custody and guardianship of the children to their aunt. On April 12, 2000, the aunt placed the children back on state assistance, receiving $124 per week from social services. Since then, the father has visited the children only sporadically, and their aunt has supervised his visits.

On April 19, 2000, the New Milford Probate Court issued a decree terminating the petitioner's parental rights as to her three children. Following that decree, the "current" child support order of the family support magistrate became inactive so that the petitioner would not be charged for "current" support as of that date. The earlier arrears order, however, remained in effect. Social services then filed a motion, supported by the department of children and families, for reconsideration and to open the decree with the New Milford Probate Court, which was denied. On June 21, 2000, however, the New Milford Probate Court granted social services' motion for appeal from probate, and an appeal was timely brought before the trial court.

After denying the petitioner's subsequent motion to dismiss the appeal for lack of standing on January 26, 2001,[1] the court held a trial de novo because no transcript had been made of the underlying Probate Court hearing. The court found that termination of the petitioner's parental rights would harm the minor children financially by reducing their weekly child support by nearly half, from $242 to $124 per week. Further, the court implicitly found that termination would harm the children emotionally because, as the court expressly stated, it would sever a relationship that the children strongly wanted to continue and did not want the court to end. The court ultimately found that termination of

[1] See *In re Jessica M.*, 47 Conn. Sup. 42, 774 A.2d 1097 (2001).

the petitioner's parental rights was not in the children's best interests; the court also found that the petitioner had failed to meet her burden of proof to show that termination was in the children's best interests. This appeal followed. Additional facts and procedural history will be provided as necessary.

## I

The petitioner's claim implicates the trial court's subject matter jurisdiction in two ways. We begin our analysis by noting our scope of review. "[Our Supreme Court] has often stated that the question of subject matter jurisdiction, because it addresses the basic competency of the court, can be raised by any of the parties, or by the court sua sponte, at any time. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Moreover, [t]he parties cannot confer subject matter jurisdiction on the court, either by waiver or by consent." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). Finally, "[b]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 611, 793 A.2d 215 (2002).

## A

The petitioner first challenges the court's subject matter jurisdiction by claiming that it improperly determined that the commissioner had standing to pursue an appeal from the New Milford Probate Court's decree terminating her parental rights. In support of that claim, the petitioner argues that the commissioner acted solely out of the financial interest of social services in obtaining child support payments from her and not in the best interests of the children. Finally, she contends

that this financial interest cannot be the basis for standing or aggrievement.

By contrast, the commissioner argues that she is aggrieved by the decree of the New Milford Probate Court to terminate the petitioner's parental rights because the decree effectively cancels the "current" child support order issued by the family support magistrate.[2] Consequently, the commissioner asserts that she has standing because the decree adversely affects her statutory right to reimbursement[3] from the petitioner of the state assistance social services formerly afforded to and currently provides for her children.[4] We agree with the commissioner.

[2] The decree terminating the petitioner's parental rights, if it were allowed to stand, would have completely severed the legal relationship between the petitioner and her children, including all rights and responsibilities she would have had relative to her children, such as providing child support. See General Statutes § 45a-707 (8); *In re Bruce R.*, 234 Conn. 194, 214, 662 A.2d 107 (1995).

[3] General Statutes § 17b-93 (a) provides in relevant part: "If a beneficiary of aid under the . . . aid to families with dependent children program [or] temporary family assistance program . . . has or acquires property of any kind or interest in any property, estate or claim of any kind, except moneys received for the replacement of real or personal property, the state of Connecticut shall have a claim subject to subsections (b) and (c) of this section, which shall have priority over all other unsecured claims and unrecorded encumbrances, against such beneficiary for the full amount paid, subject to the provisions of section 17b-94, to him or in his behalf under said programs; and, in addition thereto, the parents of an aid to dependent children beneficiary . . . or a temporary family assistance beneficiary shall be liable to repay, subject to the provisions of said section 17b-94, to the state the full amount of any such aid paid to or in behalf of either parent, his spouse, and his child or children. The state of Connecticut shall have a lien against property of any kind or interest in any property, estate or claim of any kind of the parents of an aid to dependent children beneficiary, in addition and not in substitution of its claim, for amounts owing under any order for support of any court or any family support magistrate, including any arrearage under such order . . . ."

[4] Although the commissioner also contends that she has standing to appeal on the basis of notice requirements, an assignment of rights by the petitioner and under General Statutes § 45a-131, which provides in relevant part that the commissioner may fully participate in Probate Court proceedings, we need not address those alternative arguments.

"It is axiomatic that a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim." *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 346, 780 A.2d 98 (2001). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Webster Bank* v. *Zak*, supra, 259 Conn. 774. Accordingly, "[o]ur standing jurisprudence consistently has embodied the notion that there must be a colorable claim of a direct injury to the [party] . . . ." *Ganim* v. *Smith & Wesson Corp.*, supra, 346.

We have ruled previously that the right to appeal from a Probate Court decree, or standing to do so, is statutorily conferred by General Statutes § 45a-186, which determines standing by whether a party is aggrieved by that decree.[5] See *Adolphson* v. *Weinstein*, 66 Conn. App. 591, 595, 785 A.2d 275 (2001), cert. denied, 259 Conn. 921, 792 A.2d 853 (2002); see also *In re Michaela Lee R.*, 253 Conn. 570, 606, 756 A.2d 214 (2000) (appeal from probate is absolute right of aggrieved person). "[T]he absence of aggrievement, as required by that statute, is a defect that deprives the Superior Court of jurisdiction to entertain the appeal." (Internal quotation marks omitted.) *Adolphson* v. *Weinstein*, supra, 595. Section 45a-186 (a) provides in relevant part: "Any person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise spe-

---

[5] Although the concepts of standing and aggrievement are not legally identical, the question of aggrievement is in essence a question of standing. See *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 255, 773 A.2d 300 (2001). As to the present issue, therefore, if the commissioner was aggrieved by the decree, of the Probate Court, then she has standing to mount an appeal of that decree, and the trial court may exercise its subject matter jurisdiction over that appeal.

cially provided by law, may appeal therefrom to the Superior Court . . . ." In relation to appeals from Probate Court decrees, we have ruled that "[a]ggrievement requires only the existence of a cause of action on which a party's plea for relief may rest. . . . The concept of aggrievement turns on whether there is a possibility, as distinguished from a certainty, that the Probate Court's order or decree has adversely affected some legally protected interest that the [party] has in the subject matter of the decree or order or in the estate." (Citation omitted.) Id., 596.

More than one decade ago, our Supreme Court had occasion to address specifically the issue of whether a state agency has standing to appeal from a decision of the Probate Court that has an impact on the state's right to reimbursement of assistance payments. See *Dept. of Income Maintenance* v. *Watts*, 211 Conn. 323, 326–27, 558 A.2d 998 (1989). In *Watts*, the state agency that was the predecessor to social services appealed from a Probate Court decision approving "the disclaimer, by a conservator of an incapable person receiving state assistance, of his ward's interest in a testamentary trust, in view of the prohibition . . . against dispositions of the property of state aid recipients." Id., 324. Examining the state's financial interest, our Supreme Court stated that the legally protected interest affected by the Probate Court decision "may be a direct pecuniary one, or it may consist of an injurious effect upon some legally protected right or status of the appellant." Id., 326. Citing General Statutes § 17-83e, the statutory predecessor to General Statutes § 17b-93,[6] our Supreme Court ultimately held that the state had standing to appeal because it had the right to reimbursement of assistance, and the Probate Court decision could possibly adversely affect that right. Id., 326–27. Although we recognize that the factual underpinnings

[6] See footnote 3.

in *Watts* may differ from those of the present case, the ultimate legal principle illuminated in that case is no less applicable to the scenario at hand.

In this case, the petitioner received monthly state assistance from social services, in the form of AFDC and TANF benefits, to help care for her children. Under § 17b-93, the commissioner has the statutory right to seek reimbursement of that assistance from the petitioner, i.e., *from the legal parent of an aid to dependent children beneficiary or a temporary family assistance beneficiary.* See General Statutes § 17b-93 (a). As a result, it is clear that the Probate Court's decree terminating the petitioner's parental rights possibly adversely affects the commissioner's right to reimbursement because it eradicates the petitioner's status, along with the rights and responsibilities pertaining thereto, as the legal parent of the children. Accordingly, the commissioner qualifies as an aggrieved person and has standing to pursue her appeal.

B

The petitioner next claims that the court improperly exercised its subject matter jurisdiction because it proceeded to trial while related proceedings, of which it was aware, were pending before the Waterbury Probate Court. More specifically, the petitioner argues that the trial court should have dismissed the commissioner's appeal because it knew that the Waterbury Probate Court already had before it an application from the children's father to restore his guardianship of the children. We decline to review that claim.

In claiming that the trial court should have dismissed the commissioner's appeal because of an action pending before the Waterbury Probate Court, the petitioner appears to be raising the prior pending action doctrine

for the first time on appeal.[7] The prior pending action doctrine is properly raised via a motion to dismiss before the trial court. See *Gaudio* v. *Gaudio*, 23 Conn. App. 287, 294, 580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990). We also note that the prior pending action doctrine "does not truly implicate subject matter jurisdiction. . . . It may not, therefore, as is true in the case of classic subject matter jurisdiction, always be raised at any time." (Citation omitted.) Id., 294–95. Here, the petitioner's motion to dismiss the appeal raised only the issue of standing. Moreover, even if the petitioner's claim had been properly raised at the trial level, the parties have not provided this court with an adequate record for review because the record does not contain a copy of the pleadings from the Waterbury Probate Court that we may compare with the pleadings of this case. Cf. *Modzelewski* v. *William Raveis Real Estate, Inc.*, 65 Conn. App. 708, 714, 783 A.2d 1074, cert. denied, 258 Conn. 948, 788 A.2d 96 (2001). For those reasons, we decline to review the issue and turn to the petitioner's next and last claim.[8]

---

[7] "We have explicated the prior pending action doctrine as follows: The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction. . . . The rule forbidding the second action is not, however, one of unbending rigor, nor of universal application, nor a principle of absolute law . . . . We must examine the pleadings to ascertain whether the actions are virtually alike." (Internal quotation marks omitted.) *Modzelewski* v. *William Raveis Real Estate, Inc.*, 65 Conn. App. 708, 713–14, 783 A.2d 1074, cert. denied, 258 Conn. 948, 788 A.2d 96 (2001).

[8] Although we cannot review the issue, we note that on its face, the petitioner's prior pending action claim appears to be fatally flawed because none of the elements of the doctrine seem to apply to the facts of this case. For example, the present matter was filed on June 7, 1999, but the "prior" pending action was filed nearly ten months later on March 29, 2000. Moreover, the Waterbury proceeding involved different parties (the children's father and paternal aunt) and appears not to have been brought to obtain

## II

The petitioner's final claim is that the court improperly denied her petitions to terminate her parental rights despite her consent. Specifically, the petitioner asserts that the court based its decision as to what is in her children's best interests solely on her finances. She argues that in doing so, the court improperly expanded our Supreme Court's holding in *In re Bruce R.*, 234 Conn. 194, 214–15, 662 A.2d 107 (1995), by making financial considerations the sole determinative issue in whether a consensual termination of parental rights petition is granted rather than just a factor in such a decision. In support of her claim, the petitioner contends that the court had no factual basis on which to find that her children's best interests would be better served by an indirect relationship with their mother through her provision of child support rather than no relationship with her and no provision of child support. We do not agree.

The following additional facts and procedural history are relevant to our determination of the petitioner's claim. It is undisputed that the petitioner filed knowing and voluntary consensual petitions to terminate her parental rights as to her three minor children, and the court so found during the trial. Notwithstanding that, the petitioner insisted at trial that she did not file her petitions to avoid paying child support, but then also claimed that she could not be available "for anybody or anyone financially or emotionally." By contrast, the petitioner admitted that despite having secured and then lost a number of jobs, she became financially and emotionally stable enough to handle time away from work and to pay a lawyer to proceed with the termination of her parental rights. She stated that she decided

the same end or object (the guardianship of the children as opposed to the termination of the petitioner's parental rights).

to pursue the termination at a time "when I felt that I was financially set and medical insurance had finally kicked in, and that I was starting to go on with my life."

Further, the petitioner acknowledged that she understood that she was not being asked to "become intimately involved with the children on a daily basis." She also stated that even if the court hypothetically could guarantee her safety from the children's father and end any contact between her and her children, except for paying child support, she would not agree to pay the child support. Nonetheless, an investigation supervisor from social services testified that on the basis of the petitioner's present financial circumstances, she could successfully request to modify the family support magistrate's order to pay $242 per week for child support plus $18 per week in arrears to $183 per week for child support plus $37 per week in arrears. The supervisor further stated that the children were then receiving only $124 per week from the state.

During the trial, the court interviewed the children in camera to determine whether they wanted to sever their relationship with the petitioner. The court then clearly stated on the record its findings from that interview. Detailing each child's responses from the interview, the court referred to their statements and drawings about how much they missed their mother. The court summarized the children's feelings by stating that there was "absolutely no question that these kids want mother to remain in their lives, want to reconnect with mother and definitely oppose, each and every one of them, terminating mom's parental rights." Those findings also are undisputed in this appeal.

On September 14, 2001, in preparing to announce its findings on the record, the court stated, "It is painfully obvious . . . that petitioner has assigned tending to her own selfish needs as her top priority in life." The

court then stated that its duty was to consider the needs of the children. The court then found that the petitioner's motivation in seeking termination was her "desire to maintain financial independence and a desire to get even with the state for terminating her benefits." The court further found that the children did not want the petitioner's parental rights terminated. Moreover, the court found that the children had been severely penalized by the decree of the New Milford Probate Court terminating the petitioner's parental rights.

Recognizing that it could not force the petitioner to reconnect emotionally with her children, the court stated that it could "utilize [the] petitioner's demonstrated earning capacity to improve the children's financial health." The court also found that from the petitioner's perspective, "[i]t's about the money and it should be about the children." In accordance with that, the court stated that it would not allow the petitioner to "pull off [a] ruse or sham." The court then announced its finding that by clear and convincing evidence, the petitioner had failed to satisfy her burden of proof that termination of her parental rights would be in the best interests of the children. Finally, the court declared the decree of the New Milford Probate Court null and void, and it denied the petitioner's petitions to terminate her parental rights.

"The standard for review on appeal [in a termination of parental rights case] is whether the challenged findings are clearly erroneous." (Internal quotation marks omitted.) *In re Alissa N.*, 56 Conn. App. 203, 207, 742 A.2d 415 (1999), cert. denied, 252 Conn. 932, 746 A.2d 791 (2000). Thus, "[o]n appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon

the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Gary B.*, 66 Conn. App. 286, 289, 784 A.2d 412 (2001); see also 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 35, p. 161 & (Cum. Sup. 2001) § 35, p. 149.

We are mindful as well of our Supreme Court's holding in *In re Bruce R.* that "[t]he termination of parental rights . . . is a drastic solution; it severs all ties between parent and child, including the parent's duty to support his or her children. As such, parental rights should not be terminated solely to advance the convenience and interests, either emotional or financial, of the parent. . . . Such petitions seek judicial imprimatur on a parent's own, voluntary abandonment of his or her parental responsibility. This court cannot condone such actions without a careful consideration of the financial condition of the parents as part of judicial review. Therefore, trial courts should grant consensual petitions only in those rare situations where, after considering the totality of the circumstances, including the financial condition of the parents, granting that petition truly would be in the best interest of the child." (Citation omitted.) *In re Bruce R.*, supra, 234 Conn. 214.

The petitioner claims that the court's determination was solely based on her financial situation and that, as such, it contravenes the mandate of our Supreme Court. Simply put, that is a clear mischaracterization of the court's findings and the bases for them. In making its findings, the court referred to the petitioner's motivation in seeking termination, the feelings the petitioner's children had about terminating her parental rights, and the financial ability of the petitioner to pay child support, despite her desire to end her relationships, legal or otherwise, with her children. The court noted that it believed she wanted to pull off a ruse on it, her

children and the state's taxpayers. The court's multifaceted approach demonstrates that it considered the totality of the circumstances based on all the testimony and exhibits, and not just the petitioner's financial means. In accordance, it is clear that the court did not expand the meaning of our Supreme Court's holding in *In re Bruce R.*

It also is evident from our thorough review of the record that the trial court's findings are, in light of the evidence in the entire record, not clearly erroneous. The petitioner stated that rather than using her financial means to provide for her children, she preferred to seek the termination of her parental rights and responsibilities. Nonetheless, the commissioner offered evidence that the petitioner could successfully modify the amount of child support she would have to pay and that this would still benefit the children in comparison to what benefits they received from the state. Moreover, the children demonstrated in an interview with the court that they strongly wanted to keep a relationship with their mother. Rather than allowing the petitioner to pull off a sham on the court and to divest herself of her responsibilities to her children, which would directly undermine our law, the court determined, on the basis of the entire record, that the petitioner had failed to meet her burden of proving that termination of her parental rights was in the children's best interests. Making every reasonable presumption in favor of the court's ruling, we conclude that the court's findings were legally correct and factually supported and, thus, not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.