[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
This case raises federal and state constitutional issues implicated by the arrest of protestors on state property. Tanya Murray and Walter Hrozenchik, the plaintiff's, allege that they were handing out literature at a circus held on the Western Connecticut University grounds on October 1, 2000. The literature discussed the treatment of circus animals.
The plaintiff's allege that they had protested the circus before. The plaintiff's also allege that the supervising officer of the Western Connecticut University police, Roger Connor, established a protest area three hundred feet away from the grounds where the circus was held in an attempt to allegedly make their future protest meaningless.
At 6:43 p.m., Robert Josvanger and Anthony Figueroa, two university police officers, arrested the plaintiff's. The officers charged the plaintiff's with a violation of General Statutes § 53a-182a,[1]
obstructing free passage. Later, the charge was substituted with a charge of violation of General Statutes § 53a-182,[2] disorderly conduct. The plaintiff's allege that their protest had not been "loud, raucous, boisterous, obstructing anybody's free passage and [the plaintiff's] were generally acting in a polite manner."
The plaintiff's went to trial for the accused crime, but were found not guilty on March 1, 2001. Another university police officer allegedly testified that their demonstration had been peaceful.
On January 10, 2002, the plaintiff's filed an eight count complaint against Josvanger, Figueroa and Connor, the defendants. The plaintiff's alleged that the defendants infringed on their state and federal constitutional rights.
On March 14, 2002, the defendants filed a motion to dismiss the CT Page 12777 complaint. The court heard argument on July 1, 2002.
 DISCUSSION
The defendants' motion contends that the lawsuit should be dismissed for lack of subject matter jurisdiction. "A motion to dismiss . . . properly attacks the jurisdiction of the court. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Citations omitted; internal quotation marks omitted.) Ferreira v. Pringle,255 Conn. 330, 346, 766 A.2d 400 (2001). "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." Upson v. State, 190 Conn. 622, 624, 461 A.2d 991 (1983). "It is well established that [i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) Lawrence Brunoli, Inc. v.Branford, 247 Conn. 407, 410-11, 722 A.2d 271 (1999).
Before argument was held on the motion to dismiss, the plaintiff's filed a request to amend the complaint on May 9, 2002. This request was filed after the motion to dismiss was filed. While there is no objection to the request, making the complaint for most purposes the operative complaint, a court is obligated to rule on the initial complaint to which the motion to dismiss is directed because subject matter jurisdiction is raised. Federal Deposit Ins. Corp. v. Peabody, N.E., Inc., 239 Conn. 93,99-100, 680 A.2d 1321 (1996). Accordingly, the court construes the plaintiff's' original complaint.
The defendants contend that the plaintiff's have failed to allege constitutional violations regarding their common-law constitutional claims.[3] When the state violates an individual's constitutional right, the individual may bring suit against the state under an exception to sovereign immunity and as a common law action. Bivens v. Six UnknownFederal Narcotics Agents, 403 U.S. 388, 397, 29 L.Ed.2d 619,91 S.Ct. 1999
(1971); Binette v. Sabo, 244 Conn. 23, 25-26, 710 A.2d 688 (1998);Sentner v. Board of Trustees, 184 Conn. 339, 343, 439 A.2d 1033 (1981). Therefore, if the plaintiff's have failed to allege actions that violated their constitutional rights, the court would lack subject matter jurisdiction to entertain the present case.
The second count alleges that Josvanger and Figueroa's arrest violated the plaintiff's' rights under the constitution of Connecticut, article first, §§ 7 and 9. The third count alleges mental distress resulting CT Page 12778 from this conduct. The fourth count alleges that the arrest violated the constitution of Connecticut, article first, § 14. The fifth count alleges that Josvanger and Figueroa's arrest violated the plaintiff's' rights under the first, fourth and fifth amendments to the United States constitution. The sixth count alleges that Connor's designation of a protest area violated the constitution of Connecticut, article first, § 14. The seventh count alleges that Connor's actions violated thefirst amendment to the United States constitution. The court shall first discuss the second through fifth counts, directed at Josvanger and Figueroa.
 I
The plaintiff's have alleged that Josvanger and Figueroa violated their free speech rights and their rights regarding arrest and search and seizure. Each set of rights shall be handled separately.
 A
The defendants argue, and the plaintiff's do not contest, that if the plaintiff's did not allege that the defendants violated the plaintiff's' free speech rights by arresting them, then sovereign immunity would bar the third, fourth and fifth counts. Accordingly, the court shall determine whether the plaintiff's have pleaded a violation of their speech rights.
In the present case, the plaintiff's have alleged violation of their speech rights under the Connecticut and United States constitutions. These two constitutions do not, however, afford the same speech rights. The Connecticut Supreme Court "explicitly has stated that the Connecticut constitution, under article first, §§ 4, 5 and 14, provides greater protection for expressive activity than that provided by thefirst amendment
to the federal constitution." Leydon v. Greenwich, 257 Conn. 318,347, 777 A.2d 552 (2001). The United States constitution, however, "sets minimum national standards for individual rights. . . ." Id., 347 n. 34. Accordingly, if the plaintiff's have alleged that their rights under the United States constitution have been abridged, then this court need not determine whether they have alleged that their state constitutional rights have been abridged.
The defendants do not contest that the alleged activity of the plaintiff's is expressive conduct. Indeed, "peaceful leafletting activities are clearly protected by the First Amendment." Henderson v.Lujan, 964 F.2d 1179, 1181 (D.C. Cir. 1992). Accordingly, to determine how much the officers could proscribe the plaintiff's speech, this court CT Page 12779 must determine what type of forum the plaintiff's used for their expressive conduct.
"In evaluating government regulations concerning private individuals' speech on government-owned property, the Supreme Court has identified three categories of forums — the traditional public forum, the designated public forum, and the nonpublic forum — and has developed a body of law styled `forum analysis.'" (Internal quotation marks omitted.) Perry v. McDonald, 280 F.3d 159, 166 (2nd Cir. 2001). "A traditional public forum is property, such as a public street or a park, that by long tradition or by government fiat . . . ha[s] been devoted to assembly and debate." (Internal quotation marks omitted.) Id. "In addition to traditional public forums, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects. . . . The state's power to restrict speakers' access to this category of public forum is subject to the same first amendment constraints that apply to traditional public forums." (Citations omitted; internal quotation marks omitted.)Chiu v. Plano Independent School District, 260 F.3d 330, 345 (5th Cir. 2001). Accordingly, if the plaintiff has pleaded a public forum, the court need not differentiate between the traditional or designated public forums.
The complaint does not specifically state the location of the expressive activity. "What is necessarily implied [in an allegation] need not be expressly alleged [however]." (Internal quotation marks omitted.)Clohessy v. Bachelor, 237 Conn. 31, 33 n. 4, 675 A.2d 852 (1996). In their complaint, the plaintiff's have alleged that they were on university grounds, disbursing literature about the treatment of the animals in the circus. Also, the plaintiff's have alleged that they were initially charged with obstructing free passage, which may have included a charge of blocking entrance into a public structure. In order to distribute their literature, the plaintiff's would have to interact with the public as they made their way into the circus. Moreover, for the initial charge to apply, the plaintiff's would have to be on the outside of the auditorium, but among the attending public. Accordingly, this court concludes that the complaint implies that the plaintiff's were holding their protest in a public forum near the auditorium.[4]
Determining that the plaintiff's have alleged a public forum, the court must now determine whether the regulation of the public forum was proper. "The government may regulate the use of [public forums] through appropriate, limited discretion, under properly drawn statutes or ordinances, concerning the time, place, duration, or manner of the use CT Page 12780 . . . but the government's limited discretion must be exercised uniformly and systematically so as not to create any unfair discrimination." (Citation omitted; internal quotation marks omitted.) Johnson v. Bax,63 F.3d 154, 158 (2nd Cir. 1995).
The allegations of the complaint fall within the category of retaliatory arrest for exercising speech rights. The plaintiff's in the present case must allege that " (1) [they have] an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [their] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [their]First Amendment
right." Curley v. Suffern, 268 F.3d 65, 73 (2nd Cir. 2001). As stated, the plaintiff's have alleged that they were engaged in protected expressive conduct. The second prong is fulfilled in the present case by inference. The plaintiff's allege that they had previously protested on the grounds. On this occasion, however, the defendants arrested them for disorderly conduct even though the protest was allegedly peaceful, polite and non-obtrusive.
As to the third prong, the plaintiff's have also sufficiently pleaded a chilling effect to their First Amendment rights. "Illegal arrests . . . may deter peaceful and law-abiding citizens from exercising theirfirst amendment
rights, especially if they cannot be confident that they will be given a chance to disperse before . . . arrests . . . take place. For those who are not deterred and are unlawfully arrested, the opportunity for speech will have been lost, sometimes irretrievably, even though prosecutions are later dismissed, arrest records are expunged and individual damage actions are successful." Washington MobilizationCommittee v. Cullinane, 566 F.2d 107, 127-28 (D.C. Cir. 1977). In the present case, the plaintiff's have alleged that their arrests are illegal, given that their actions did not allegedly violate § 53a-182. "[T]he First Amendment does not prevent enforcement of disorderly conduct statutes so long as they are not vague or applied to curb protected speech." (Internal quotation marks omitted.) Knox v. Southwest Airlines,124 F.3d 1103, 1109 (9th Cir. 1997). In the present case, the plaintiff's have alleged that the arrests were made to curb their protected speech.
 B
The second, third and fifth counts rely upon a wrongful arrest of the plaintiff's by Josvanger and Figueroa. The plaintiff's have alleged violations of their state and federal constitutional rights in this regard.
"An arrest without probable cause may violate a defendant's CT Page 12781 constitutional right to be free from unreasonable seizures." Bailey v.Andrews, 811 F.2d 366, 372 (7th Cir. 1987).[5] Also, in Connecticut, "[n]o person shall be arrested . . . except in cases clearly warranted by law." Conn. Const., art. I, § 9.
In the present case, the plaintiff's have alleged that they were arrested for blocking public passage and tried for disturbing the peace. They have alleged, however, that their conduct was peaceful and without discord and did not block the way of those trying to attend the circus. Moreover, they pleaded facts to support this allegation because they alleged that another arresting officer testified that the protest had been peaceful. "It is fundamental that an arrest violates theFourth Amendment when there exists no reasonable suspicion or probable cause that an individual is engaged in criminal activity." Gainor v. Rogers,973 F.2d 1379, 1387 (8th Cir. 1992). Moreover, "a full-fledged arrest must be supported by probable cause." McCurdy v. Montgomery County,240 F.3d 512, 517 (6th Cir., 2001).
Because of the allegations, the plaintiff's have sufficiently pleaded that their arrests were performed without sufficient probable cause. Accordingly, they have alleged that their arrests were illegal and wrongful in violation of their rights.
 II
The sixth and seventh counts, directed at Connor, allege that he, in his official position, attempted to construct an area for protest that would have made the protest meaningless and, thus, violated their speech rights. The defendants argue that the plaintiff's have failed to allege enforcement of the protest area. The court agrees.
Claims for violation of speech rights depend on "an injury in fact; that is . . . some threatened or actual injury resulting from the putatively illegal action." (Internal quotation marks omitted.) Bordellv. General Electric Co., 922 F.2d 1057, 1060 (2nd Cir. 1991). Connecticut law also requires injury for standing. In re Jessica M., 71 Conn. App. 417,424, 802 A.2d 197 (2002). In the sixth and seventh counts, the plaintiff's have alleged the establishment of an allegedly impermissible protest area, but have not alleged enforcement of such an area. Lack of such facts will not support a claim of injury in fact.
Also, the plaintiff's have not alleged a future injury. While they may claim an injury of future chilled speech "[a]llegations of a subjective `chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." (Internal quotation CT Page 12782 marks omitted.) Bordell v. General Electric Co., supra, 922 F.2d 1060-61. The effect in the sixth and seventh counts differs from the effect of the arrests. Arrests, as discussed above, may chill the speech of ordinary persons. In the present case, however, the plaintiffs have not alleged that they suffered any harm from the establishment of the protest area or that they were deterred from properly protesting elsewhere in the future.
Accordingly, the sixth and seventh counts do not allege a harm or possible future injury caused by the establishment of the protest area. Because there is no harm alleged, the court lacks subject matter jurisdiction for lack of standing[6] and for sovereign immunity due to the lack of allegations of unconstitutional action by Connor.
 CONCLUSION
For the reasons stated herein, the court grants the motion as to the sixth and seventh counts but denies the motion as to the second, third, fourth and fifth counts.
White, J.