972 A.2d 258 (2009)
115 Conn.App. 111
In re S.D.[*]
No. 29053.
Appellate Court of Connecticut.
Argued March 16, 2009.
Decided June 16, 2009.
*260 Gary J.C. Woodfield, New Britain, for the appellant (respondent father).
Susanne D. McNamara, New Britain, for the appellee (petitioner).
Traci J. Valery, for the minor child.
BISHOP, LAVINE and ROBINSON, Js.
LAVINE, J.
This appeal arises out of a termination of parental rights petition filed by the petitioner, the mother of the minor child, in the Court of Probate for the district of East Hartford pursuant to General Statutes § 45a-715.[1] Following the termination of his parental rights as to the child, the respondent, the child's father, appealed from that judgment to the trial court, which again terminated his parental rights. On appeal to this court, the respondent claims that the trial court improperly (1) failed to find that reasonable efforts were made to locate and to reunite him with the child, (2) found that he had abandoned the child and that there was no ongoing parent-child relationship and (3) found that it was in the best interest of the child to terminate his parental rights.[2] We affirm the judgment of the trial court.
The following procedural history is relevant to the respondent's appeal. On June 3, 2004, the petitioner filed an application to terminate the respondent's parental rights as to the parties' son in the Court of Probate for the district of East Hartford.[3] The petitioner alleged that the child had been abandoned by the respondent, that there was no ongoing parent-child relationship between the respondent and the child, and that to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interest of the child. Following a hearing, the Court of Probate, Hon. Allan T. Driscoll, found that "[n]o evidence was presented indicating that any services were offered to the respondent to facilitate the reunion of the child with the parent" and that "[u]nder the present circumstances, the absence of such services is irrelevant." The Court of Probate also found that the respondent had abandoned the child when he left Hartford for South Carolina in late 1999, putting his concerns for himself ahead of his responsibilities as a parent. The court found by clear and convincing evidence that because of the wilful conduct of the respondent, there was no ongoing parent-child relationship as defined by General Statutes § 45a-717(g)[4] and that to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interest of the child. Judge Driscoll approved the termination of *261 the respondent's parental rights on October 11, 2005. The respondent appealed to the trial court from the termination of his parental rights.[5]
The trial court commenced a trial de novo on May 11, 2007, and granted the petitioner's motion that it take judicial notice of the ruling of the Court of Probate. After determining that the respondent knowingly and voluntarily waived his right to counsel,[6] the court appointed attorney Michael Perez as standby counsel. The court heard testimony from the petitioner, the respondent, his paternal aunt and Maria W. Cruz, a social work supervisor from the department of children and families (department). The court also received in evidence a department social study regarding termination of parental rights dated January 10, 2004, and an addendum dated May 10, 2007.
The court made the following relevant findings of fact. The petitioner and the respondent were married to one another on February 14, 1998. The child was born on August 10, 1998. In July, 1999, the respondent went to the emergency room at Manchester Memorial Hospital for a psychotic episode and did so again one week later after having attempted to stab the petitioner with a screwdriver. The respondent was diagnosed with a mental disorder secondary to a traumatic brain injury. Shortly after being released from a psychiatric hospital in late 1999, the respondent left the marital home for parts unknown. The petitioner did not hear from the respondent until July, 2000, when he telephoned her from South Carolina, telling her that he had been arrested and that he needed bail money. The petitioner refused to give the respondent money. The petitioner learned later that the respondent was a convicted felon and that he was arrested for violation of parole and other charges. The respondent had concealed his criminal record from the petitioner. After the respondent was released from prison, he returned to Connecticut where he was arrested again and charged with sexual molestation of a minor. At the time of trial on the termination petition, the respondent was serving a sentence after being convicted of risk of injury to a child and sexual contact with a minor.
In April, 2000, the petitioner commenced an action to dissolve the parties' marriage. The respondent was defaulted for failure to appear after the court, Hon. Simon S. Cohen, judge trial referee, found that the respondent had been served properly, was not a member of the armed forces of the United States and was incarcerated. Judge Cohen rendered judgment of dissolution on July 24, 2000, ordering the respondent to pay, among other things, $1 per year for child support. The court granted the petitioner sole custody of the child and granted the respondent visitation rights.
The petitioner filed an application for the termination of the respondent's parental rights on June 3, 2004, on the grounds of abandonment and no ongoing parent-child relationship. The application noted that the respondent was incarcerated at Garner Correctional Institution in Newtown. Following the Court of Probate's termination of the respondent's parental rights, the court on December 12, 2006, granted the respondent's application *262 to appeal from the termination decree to the Superior Court.[7]
"The legal framework for deciding termination petitions is well established. [A] hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the ... grounds for termination of parental rights set forth in [General Statutes § 17a-112(j)(3)] exists by clear and convincing evidence.... If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child.... The best interest determination also must be supported by clear and convincing evidence." (Citations omitted; internal quotation marks omitted.) In re Davonta V., 285 Conn. 483, 487-88, 940 A.2d 733 (2008).
"It is axiomatic that a trial court's factual findings are accorded great deference. Accordingly, an appellate tribunal will not disturb a trial court's finding that termination of parental rights is in a child's best interest unless that finding is clearly erroneous.... A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made....
"On appeal, our function is to determine whether the trial court's conclusion was factually supported and legally correct.... In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence.... We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached.... [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) Id., at 488, 940 A.2d 733. Proof of one ground is sufficient to terminate parental rights. See In re Brea B., 75 Conn.App. 466, 473, 816 A.2d 707 (2003).

I
The respondent's first claim is that the trial improperly failed to find whether reasonable efforts were made to locate and to reunite him with the child as required by § 17a-112(j)(1). More specifically, the respondent claims that court improperly failed to find that reasonable efforts had not been made to locate him. The respondent claims, as well, that the evidence supporting the court's finding that he had abandoned the child was not credible.
As a preliminary matter, we disagree with the respondent's premise that a reasonable efforts finding in this case was required under § 17a-112 (j)(1). We look first to the language of the statute. Statutory construction is a question of law to which the plenary standard of review applies. See In re William D., 97 Conn.App. 600, 606, 905 A.2d 696 (2006), aff'd, 284 Conn. 305, 933 A.2d 1147 (2007).
Section 17a-112(j) provides in relevant part: "The Superior Court ... may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection *263 (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts ... or determines at trial on the petition, that such efforts are not required...." (Emphasis added.)[8]
In the portion of its memorandum of decision entitled "Reasonable Efforts Finding," the court stated that "[u]nless a court has found in an earlier proceeding that efforts to reunify are no longer appropriate, [the department], in order to terminate parental rights, initially must show by clear and convincing evidence that it `has made reasonable efforts to locate the parent and to reunify the [child] with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification.' [General Statutes] § 17a-112(j)(1)." Immediately thereafter, the court stated: "[R]easonable efforts to reunify [the child with the respondent] are no longer appropriate because [the respondent] continues to be involved with criminal issues; he has not maintained adequate housing or legal income; and he has abandoned [the child] in that he had not had visitation or contact with him since [the child] was five months old. [The respondent] has not kept his whereabouts known to [the petitioner] or the child."
As we previously set forth, the court made findings of fact by clear and convincing evidence, including that the respondent abandoned the family in late 1999 and that the petitioner did not hear from him again until July, 2000, when he telephoned her from South Carolina and asked her for bail money. The court also found with regard to family history that the child's half-sister reported that the respondent had abused her sexually. The respondent was arrested on sexual molestation charges and sentenced on June 21, 2006. At the time of the trial, the respondent was incarcerated, serving a four year sentence for risk of injury to a child and sexual contact with a minor.
On the basis of § 17a-112 and our review of the court's memorandum of decision, we conclude that the evidence and the court's specific findings of fact support its conclusion that reasonable efforts to reunite the respondent and the child were no longer appropriate. We deem the court's language to be the functional equivalent of the statute's language that such efforts were no longer required. The court found that the respondent had abandoned the child by leaving the home in late 1999 and not communicating with the child or inquiring as to his welfare while the respondent was living and incarcerated in South Carolina or when he returned to Connecticut. The respondent failed to support the child. Moreover, the respondent was convicted and incarcerated for sexual assault of a minor, the child's half-sister. On the basis of those findings, the court found that reasonable efforts to *264 reunite the respondent with the child were no longer appropriate. Given the court's finding with respect to reasonable efforts to reunite, it was not necessary for the court to find that the department "made reasonable efforts to locate the parent and to reunify the child with the parent," as § 17a-112(j)(1) provides "that such finding is not required if the court ... determines at trial ... that such efforts are not required...." General Statutes § 17a-112(j)(1); see In re Shaiesha O., 93 Conn. App. 42, 47, 887 A.2d 415 (2006) (court need not make that finding if parent is unable or unwilling to benefit from reunification efforts). Moreover, the record demonstrates that the petition to terminate indicated that the respondent was in Newtown. At the time of trial, the department knew that the respondent was incarcerated at Garner Correctional Institution in Newtown.
We agree with the respondent's claim that the court's finding that he had not visited with the child since the child was five months old is clearly erroneous. The word month, however, appears to be a scrivener's error. Approximately five years had passed between the time the respondent left Connecticut in 1999 and the petitioner filed the petition to terminate the respondent's parental rights.[9] There is evidence in the record that the respondent made no effort to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child during those five years.

II
The respondent's second claim is that the court's findings that he abandoned the child and that there was no ongoing parent-child relationship pursuant to § 17a-112 (j)(3)(A) and (D) were clearly erroneous because the court improperly (1) relied on the petitioner's testimony, (2) limited the respondent's cross-examination of the petitioner, (3) credited the petitioner's testimony and (4) failed to strike Cruz' testimony. We do not agree.
The gist of the respondent's claims is that the court should not have accepted the testimony of the petitioner, which was a credibility determination. This court repeatedly has stated that it will not reverse the decision of the trier of fact on the basis of credibility determinations. See, e.g., In re Cheila R., 112 Conn.App. 582, 589, 963 A.2d 1014 (2009).
With respect to the claim that the court failed to allow the respondent to cross-examine the petitioner, he refers to instances in which the court sustained objections on the basis of relevance, as articulated by the petitioner's counsel. The issues at trial were whether the respondent had abandoned the child and whether there was an ongoing parent-child relationship, not the status of the petitioner's health, employment, male companions and interaction with the department. Our law permits an opposing party to cross-examine a witness, but the cross-examination must comport with our rules of evidence. See In re Adalberto S., 27 Conn.App. 49, 57, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992). The court's ruling, therefore, was not an abuse of discretion.
Finally, the respondent claims that Cruz' testimony was not based on firsthand knowledge and that the department report was hearsay and, therefore, that evidence should be stricken. From *265 our review of the transcript, it does not appear that the respondent, who represented himself, preserved this claim at trial. This court does not review claims of an evidentiary nature that are raised for the first time on appeal. See State v. Romero, 59 Conn.App. 469, 477, 757 A.2d 643, cert. denied, 255 Conn. 919, 763 A.2d 1043 (2000). We therefore decline to address the claim further. See id.
The court's findings by clear and convincing evidence that the respondent had abandoned the child and that there was no ongoing parent-child relationship are supported by the record. There is no dispute that the child was born in 1998 and that the respondent left the family in late 1999 after having been institutionalized for several months. The respondent went to South Carolina where he was arrested for a probation violation and incarcerated. When the respondent returned to Connecticut, he was arrested again in 2004 for sexually molesting the child's half-sister. In 2006, the respondent was convicted of sexual assault of a minor and risk of injury to a child, and sentenced to four years of incarceration. At the time of trial, the child was not quite nine years old.
Abandonment is established by clear and convincing evidence that a parent has failed to maintain a reasonable degree of interest in or concern or responsibility for the welfare of the child. General Statutes § 17a-112(j)(3)(A). "The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Internal quotation marks omitted.) In re Jermaine S., 86 Conn.App. 819, 840, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005). The court found by clear and convincing evidence that the respondent had not seen the child since he left the family home in late 1999, a lengthy period of time, had not provided financial support for the child, had never sent cards, gifts or letters, had not acknowledged the child's birthday or other special days, had not participated in the child's education or shown an interest in the child's health or welfare and had not inquired about the child or requested visitation.
To establish the ground of no ongoing parent-child relationship pursuant to § 17a-112(j)(3)(D) it must be proven by clear and convincing evidence that "the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child...." General Statutes § 17a-112(j)(3)(D). The court found that the respondent had not seen the child since late 1999. The child would not recognize the respondent, and there was no bond or ongoing communication between them. The child has no positive memories of the respondent and has no recollection of him. The court found that the respondent demonstrated that he has no interest in the child, does not want to develop a relationship with the child and does not have the knowledge, skill or capability to interact with the child on a day-to-day basis. Moreover, the court found, to permit additional time to develop a parent-child relationship would not be in the child's best interest.
On the basis of our review of the record, we conclude that the court's findings as to *266 either statutory ground are not clearly erroneous, although only one ground is necessary to terminate parental rights. The respondent's claims on appeal are focused on the petitioner and Cruz, which are not relevant to the issue of his behavior or actions. The trial transcript is devoid of any evidence to contradict the clear and convincing evidence that the respondent abandoned the child or that there is a parent-child relationship.

III
The respondent's third claim is that the court improperly found that termination of his parental rights was in the best interest of the child because (1) the petitioner failed to prove one of the grounds alleged in the petition and (2) it is not in the best interest of the child to terminate the respondent's parental rights. We decline to review these claims due to inadequate briefing. Legal analysis rather than mere abstract assertions is required to avoid abandoning appellate claims by failing to brief them. In re Melody L., 290 Conn. 131, 154, 962 A.2d 81 (2009).

IV
The respondent's final claim is that his sixth amendment right to due process was violated during the hearing in the Court of Probate because he was not given a copy of the department report prior to the hearing. The respondent cites Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to support his claim but without analysis as to why Brady is applicable.[10] Although we will not analyze the respondent's claim for lack of adequate briefing; see In re Melody L., supra, 290 Conn. at 154, 962 A.2d 81; the record demonstrates that the respondent received a trial de novo in the Superior Court. The respondent, therefore, cannot demonstrate harm.
The judgment is affirmed.
In this opinion the other judges concurred.
NOTES
[*] In accordance with the spirit and intent of General Statutes § 46b-142(b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.
[1] General Statutes § 45a-715(a) provides in relevant part: "Any of the following persons may petition the Court of Probate to terminate parental rights of all persons who may have parental rights regarding any minor child or for the termination of parental rights of only one parent provided the application so states: (1) Either or both parents...."
[2] On appeal, counsel for the minor child has adopted the position taken by the petitioner in her brief.
[3] At the bottom of the first page of form PC-600 REV. 10/00 next to the box are the preprinted words, "The petitioner represents that the whereabouts of the parent(s) or putative father are unknown." Above the printed word whereabouts is handwritten the word Newtown.
[4] General Statutes § 45a-717(g) provides in relevant part: "(C) there is no ongoing parent-child relationship which is defined as the relationship that ordinarily develops as a result of a parent having met on a continuing, day-to-day basis the physical, emotional, moral and educational needs of the child...."
[5] Any person aggrieved by an order of the Court of Probate may appeal to the Superior Court as provided by statute. See General Statutes § 45a-186; In re Jessica M., 71 Conn.App. 417, 424, 802 A.2d 197 (2002).
[6] Counsel previously had been appointed for the respondent but counsel moved to withdraw her appearance due to a breakdown of the attorney-client relationship.
[7] The Court of Probate accepted the respondent's claim in an affidavit that he never received a copy of the October 11, 2005 termination decree until he made an inquiry in September, 2006.
[8] General Statutes § 17a-111b provides in relevant part: "(a) The Commissioner of Children and Families shall make reasonable efforts to reunify a parent with a child unless the court (1) determines that such efforts are not required pursuant to subsection (b) of this section....

"(b) The Commissioner of Children and Families or any other party may, at any time, file a motion with the court for a determination that reasonable efforts to reunify the parent with the child are not required. The court ... may consolidate the hearing with a trial on a petition to terminate parental rights pursuant to section 17a-112. The court may determine that such efforts are not required if the court finds upon clear and convincing evidence that: (1) The parent has subjected the child to the following aggravated circumstances: (A) The child has been abandoned, as defined in subsection (j) of section 17a-112; or (B) ... (4) the parent was convicted by a court of competent jurisdiction of sexual assault...." (Emphasis added.)
[9] The Court of Probate decree, of which the court took judicial notice, stated in part, "[t]he parent has not maintained contact with the custodial mother for over five years, and contact prior to that time was sporadic and irregular."
[10] The United States Supreme Court has held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, supra, 373 U.S. at 87, 83 S.Ct. 1194.