# IN RE BRIAN W. ET AL.*
## (AC 31643)

Bishop, Lavine and Dupont, Js.

Argued September 14—officially released November 2, 2010

*Maria W.*, pro se, and *Allen R. W.*, *Sr.*, pro se, the appellants (respondent paternal grandparents).

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Allen R. W., Jr.*, pro se, the appellant (respondent father).

*David B. Rozwaski*, for the appellee (petitioner mother).

*Gloria L. Harris*, for the minor children.

*Opinion*

PER CURIAM. The pro se respondents, the paternal grandparents of the minor children Brian W. and L. W., appeal from the judgments of the trial court removing the respondent grandparents as guardians and reinstating the guardianship of the petitioner, the mother of the children.[1] On appeal, the respondents claim that the trial court improperly concluded that (1) the petitioner resolved the factors that resulted in her prior removal as guardian and (2) that transferring custody to the petitioner was in the best interests of the children.[2] We affirm the judgments of the trial court.

[1] The father of the children is nominally listed as an appellant and also appears as a self-represented party. He did not argue before this court on his behalf. On appeal, the respondent grandparents seek: "Stay of the court order of November 13, 200[9], and return the children to the custody and care of [the respondent grandparents] pending further review of appeal . . . [or] [r]eversal of the court's order of November 13, 200[9], and return the minor children to the custody and care of [the respondent grandparents]." The father, who resides with his parents, withdrew his petition to be reinstated as guardian. Accordingly, for the purposes of this opinion, we refer to the paternal grandparents as the respondents.

[2] The respondents also claim that witnesses wilfully conspired to testify falsely during all proceedings to remove them as guardians. They challenge the credibility of the petitioner's witnesses, particularly that of the Probate Court officer. As an appellate court, "[w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) *In re Justice V.*, 111 Conn. App. 500, 513, 959 A.2d 1063 (2008), cert. denied, 290 Conn. 911, 964 A.2d 545 (2009). The trial court found the challenged witnesses to be credible. Accordingly, we defer to the trial court's finding regarding this claim.

The following facts and procedural history are relevant to our review of the respondents' claims. The petitioner, while in a relationship with the children's father, resided with the respondents and gave birth to Brian W. in mid-2003 and L. W. in late 2004. She moved out of the home without the children in June, 2005. In July, 2005, the respondents petitioned the Probate Court for temporary custody of the children. In January, 2006, with the consent of the petitioner and the father, both parents were removed as the guardians of the children, and the respondents were appointed as guardians. Although the petitioner consented to her removal, the primary factors resulting in her removal were her lack of stable housing and employment and her unwillingness to accept fully her parental responsibilities.

On May 27, 2008, the petitioner filed a petition with the Probate Court to be reinstated as guardian.[3] After an evidentiary hearing on November 14, 2008, at which the petitioner, the respondent grandmother and a number of professionals who worked with the family testified, the Probate Court concluded that the petitioner had resolved satisfactorily the factors that had resulted in her removal as guardian and that transferring custody to the petitioner was in the best interests of the children. By memorandum of decision dated December 5, 2008, the Probate Court ordered that the reinstatement be granted, effective as of a date to be determined by the court after a further hearing scheduled for December 23, 2008. Thereafter, the respondents commenced an appeal from the decision of the Probate Court to the Superior Court for Juvenile Matters.

On December 23, 2008, the hearing before the Probate Court went forward as scheduled, but neither the respondents nor the father attended, as apparently they

---

[3] At some point in 2006 or 2007, the petitioner began to reside with Pedro C., and the two had a daughter.

were under the misapprehension that the appeal would stay the proceedings automatically. On the basis of the recommendations of the professionals present and on the petitioner's testimony, the court reinstated the petitioner as the sole guardian of the children effective immediately. On December 23, 2008, after the hearing, the petitioner, accompanied by her attorney and with the assistance of the police department, went to the respondents' house and took physical custody of the children. The respondents and the father have not seen the children since that date.[4]

Because no transcript was made of the Probate Court hearing, in considering the respondents' appeal, the Superior Court found it necessary to conduct a trial de novo, which it did on October 16 and 19, 2009.[5] The trial court heard the testimony of Laura Pedersen, a therapist from the Klingberg Family Centers, Kareen Malcolm of the department of children and families, Lori DeLeo, an officer of the Probate Court, and Suzette Farrar, the guardian ad litem appointed for the children.[6] The court also heard the testimony of the respondent grandmother and a paternal great aunt. The court

[4] Because the respondents and the father were not present at the December 23, 2008 hearing and did not request visitation, the court did not order visitation. The Probate Court, however, also ruled that any party entitled to visitation could, without prejudice, request an order of visitation in the future.

[5] See *In re Jessica M.*, 71 Conn. App. 417, 421, 802 A.2d 197 (2002).

[6] The court credited the testimony of these professionals. In May and June, 2009, Pedersen conducted a diagnostic assessment of the petitioner and children and concluded that the children were doing well in her care and that therapy was not required. Malcolm concluded that the petitioner had completed all the necessary steps to be restored as guardian of the children and that it was in their best interests to remain in her care. DeLeo followed the family for six months after the transfer of custody and reported no concerns. Farrar concluded that even though the petitioner had missed some visits, she had developed a strong bond with the children.

The court noted that the family, including the petitioner, the children, Pedro C., and their daughter, had recently moved to Puerto Rico following unsubstantiated reports of abuse made to the department of children and families. The petitioner was unemployed and receiving food stamps there.

considered numerous exhibits and took judicial notice of the underlying probate decision.

The court made the following factual findings on the basis of the testimony and evidence presented. The petitioner had developed a strong bond with the children through supervised and unsupervised visitation between January, 2006, and November, 2008. By November, 2008, the petitioner had been able to maintain stable housing and employment for more than a year. On December 23, 2008, the children moved into the apartment that the petitioner shared with Pedro C. and their daughter. See footnote 3 of this opinion. No concerns were reported by the professionals who worked with the family thereafter. See footnote 6 of this opinion. The court concluded that the petitioner had addressed satisfactorily the housing and employment issues and demonstrated a willingness to accept her parental responsibilities.

The court also concluded that reinstating guardianship with the petitioner was in the best interests of the children because it would best foster the children's interest in sustained growth, development, well-being, and in the continuity and stability of their environment. The court noted the respondents' concerns regarding the petitioner but concluded that they did not warrant a finding that the petitioner's reinstatement was not in the children's best interests. Accordingly, the court granted the petitioner's petition and removed the respondents as guardians. This appeal followed.

---

This finding notwithstanding, the court emphasized that the petitioner had maintained suitable employment and housing for more than a year before the children were returned to her care, that she had stable housing and employment when the children were returned to her care in December, 2008, and that she maintained the same apartment until the move to Puerto Rico. The court found that the family was able to meet its daily expenses and that the children were reportedly doing well since the move.

General Statutes § 45a-611 (a) and (b)[7] provide that, in order to reinstate the parent as guardian, the court must find that the factors that resulted in the removal of the parent have been resolved satisfactorily and that it is in the best interests of the children to do so. In this appeal, the respondents claim that the trial court improperly concluded that the petitioner had resolved those factors and that transferring custody to the petitioner was in the best interests of the children.

"The award of the custody of a minor child is a matter within the sound discretion of the trial court. . . . We review the award to determine whether that discretion has been abused and whether the trial court, in the exercise of its discretion, has overlooked or misapplied some established principle of pertinent law." (Citations omitted; internal quotation marks omitted.) *In re Helen B.*, 50 Conn. App. 818, 827–28, 719 A.2d 907 (1998). "When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in . . . the decision . . . are clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is· clearly

[7] General Statutes § 45a-611 provides in relevant part: "(a) Any parent who has been removed as the guardian of the person of a minor may apply to the court of probate which removed him or her for reinstatement as the guardian of the person of the minor, if in his or her opinion the factors which resulted in removal have been resolved satisfactorily.

"(b) In the case of a parent who seeks reinstatement, the court shall hold a hearing following notice to the guardian, to the parent or parents and to the minor, if over twelve years of age, as provided in section 45a-609. If the court determines that the factors which resulted in the removal of the parent have been resolved satisfactorily, the court may remove the guardian and reinstate the parent as guardian of the person of the minor, if it determines that it is in the best interests of the minor to do so. At the request of a parent, guardian, counsel or guardian ad litem representing one of the parties, filed within thirty days of the decree, the court shall make findings of fact to support its conclusions. . . ."

erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *In re Anthony E.*, 96 Conn. App. 414, 418, 900 A.2d 594, cert. denied, 280 Conn. 914, 908 A.2d 535 (2006).

The respondents have provided this court a detailed factual record concerning their care for the children and the behavior of the petitioner, as well as of the proceedings before both the Probate Court and the Superior Court. A careful review of the documents, transcripts and record before the Superior Court demonstrates that this evidence was available to and considered by that court. The respondent grandmother testified extensively before that court and took the lead in prosecuting the trial de novo as a self-represented party, including cross-examining the petitioner's witnesses.[8] The trial court credited the testimony of the professionals, who had various opportunities to work with the petitioner and to interact with the children.

In light of this record, we cannot conclude that the trial court's findings were clearly erroneous. There was ample evidence in the record to support a finding that the factors that resulted in the petitioner's removal had

---

[8] We note that the trial court, in its memorandum of decision, noted that the respondent grandmother conducted herself admirably at the trial. The respondent grandmother similarly conducted herself in her argument before this court. As the trial court also noted, the respondent grandparents should be commended for stepping forward to act as guardians of the children and for caring so much for their welfare.

This case presented a difficult decision for the trial court. It is not always possible for grandparents and parents to share custody of their grandchildren or children. The court was sensitive to the fact that whether the respondents were awarded custody of the children or the petitioner was awarded custody of the children, disharmony could result. Based on the evidence before it, however, the court's decision was legally appropriate.

been resolved satisfactorily and that reinstating her as guardian was in the best interests of the children. Nor can we conclude that the court abused its discretion in granting the petitioner's petition and removing the respondents as guardians, thereby transferring custody of the children to the petitioner.

The judgments are affirmed.