******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

# IN RE PAULO T.*
## (AC 45111)

Bright, C. J., and Moll and Alexander, Js.

*Syllabus*

The respondent father appealed to this court from, inter alia, the judgment of the trial court granting the motion for reinstatement of guardianship rights filed by the petitioner mother with respect to their minor son, P. P lived with the mother for most of his life. After she pleaded nolo contendere to the allegation that P had been uncared for due to her homelessness, the trial court vested primary custody and sole guardianship of P in the father and ordered the mother to comply with certain specific steps, including participating in substance abuse treatment and obtaining adequate housing and legal income. Following her participation in an intensive outpatient treatment program and her residence in a sober house, the trial court granted the mother's motion for reinstatement of her guardianship rights and ordered that the parties have joint guardianship of P, with primary physical custody vested in the mother. The trial court also issued orders with respect to the father's visitation rights. Thereafter, the father filed a motion to open the judgment on the ground that the mother had failed to comply with the trial court's visitation orders. The trial court declined to exercise jurisdiction over the motion, and the father appealed to this court. *Held*:

1. Contrary to the father's claim, the trial court did not apply a presumption that reinstatement of the mother's rights was in the best interests of P: the presumption established by our Supreme Court in *In re Zakai F.* (336 Conn. 272), that reinstatement is in the best interests of the child when a parent who has filed a motion to reinstate his or her guardianship rights has demonstrated that the reasons that led to the removal of his or her guardianship rights have been resolved satisfactorily, did not apply to this case because it was a dispute between two parents and the presumption applies only when the current guardian is a nonparent; moreover, although the trial court mentioned the presumption in its decision, it did not apply the presumption in determining whether the restoration of the mother's guardianship rights was in P's best interests but, instead, carefully considered and applied the relevant statutory (§ 46b-56 (c)) criteria.

2. The trial court correctly identified the factors that led to the removal of the mother's rights and found that such factors had been resolved satisfactorily: a review of the entire record supports the trial court's determination that the mother lost her guardianship rights due to her homelessness and alcohol abuse, despite the record also having referenced other matters; moreover, the trial court's finding regarding the satisfactory resolution of those issues was not clearly erroneous because it was supported by evidence of the mother's sobriety, full-time employment and stable housing situation, and the father's arguments to the contrary constituted a request for this court to reweigh the evidence, which it could not do.

3. The evidence was sufficient to support the trial court's findings that the restoration of the mother's guardianship rights and transfer of custody to the mother were in P's best interests: the best interests determination was not based on a single factor but, rather, on consideration of the factors set forth in § 46b-56 (c); moreover, the evidence demonstrated that, contrary to the father's claims and despite the mother's difficulties, P had done well in her care prior to the loss of her guardianship rights and the transfer of custody would not result in a loss of P's educational opportunities, as other public schools had programs similar to the gifted and talented program in which P had been enrolled while residing with the father.

4. The trial court properly declined to exercise its jurisdiction to consider the arguments set forth in the father's motion to open the judgment: after the trial court reinstated the mother's guardianship rights and issued orders regarding visitation, it explicitly stated that it would not retain jurisdiction over any future visitation matters, which would need

to be addressed in the family court; accordingly, the father was required to present any visitation matters to the family court and was required to file a motion to modify custody, rather than a motion to open, in order to pursue his request that the court award him sole custody of P.

Argued March 10—officially released July 18, 2022**

*Procedural History*

Motion for reinstatement of guardianship rights, filed by the petitioner mother with respect to her minor child, brought to the Superior Court in the judicial district of Fairfield, Juvenile Matters, where the matter was tried to the court, *Maronich, J.*; judgment granting the motion and issuing orders with respect to the visitation rights of the respondent father; thereafter, the court, *Maronich, J.*, dismissed the respondent's motion to open the judgment, from which the respondent appealed to this court. *Affirmed.*

*Benjamin M. Wattenmaker*, assigned counsel, for the appellant (respondent father).

*Robert C. Koetsch*, assigned counsel, for the appellee (petitioner mother).

*Opinion*

ALEXANDER, J. The respondent father, Horace W., appeals from the granting of the motion for reinstatement of guardianship rights filed by the petitioner mother, Mae T., with respect to their minor child, Paulo T. On appeal, the respondent claims that the court (1) improperly applied a presumption that reinstatement of the petitioner's guardianship rights was in the best interests of Paulo, (2) erroneously found that the factors that had led to the removal of the petitioner's guardianship rights had been resolved satisfactorily, (3) erroneously found that reinstatement of the petitioner's guardianship rights was in the best interests of Paulo, and (4) improperly dismissed the respondent's motion to open the judgment. We disagree with these claims and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On February 17, 2019, the Department of Children and Families (department) received a referral alleging that then ten year old Paulo was physically neglected as a result of the petitioner's homelessness and abuse of alcohol. The Commissioner of Children and Families (commissioner) subsequently filed a petition for an order of temporary custody and a petition alleging that Paulo had been neglected and uncared for. During the department's investigation, the petitioner admitted that she had been evicted from her apartment, Paulo had not been attending school, and she had consumed alcohol for coping purposes in the presence of Paulo. The respondent indicated that he lived in a senior citizen building and could not be a resource for Paulo. On February 26, 2019, the court, *Randolph, J.*, issued an order vesting temporary custody of Paulo in the respondent's adult daughter, Tachelle C.[1]

On June 10, 2019, the petitioner pleaded nolo contendere to the allegation that Paulo had been uncared for due to her homelessness.[2] The court issued orders vesting primary custody and sole guardianship of Paulo in the respondent.[3] Additionally, the court ordered the petitioner to comply with certain specific steps, including participating in substance abuse treatment and obtaining adequate housing and legal income.

On November 20, 2020, the petitioner filed a motion for reinstatement of her guardianship rights[4] with the Superior Court for juvenile matters.[5] The petitioner also alleged that Paulo had been physically abused by the respondent. The petitioner sought full legal and physical custody. On February 22, 2021, the department completed a court study for the reinstatement of guardianship.[6] It recommended that (1) the court grant the petitioner's motion to reinstate her guardianship rights, (2) the court grant the respondent regular contact and visitation, and (3) the parties participate in counseling to

address their communication and interactions with respect to Paulo.

The court, *Maronich, J.*, conducted a hearing on September 7 and 8, 2021. After considering the testimony and evidence, and hearing the arguments of counsel, the court issued an oral decision. At the outset, the court noted that Paulo had been removed from the petitioner's care due to "the immediate problem of homelessness, secondary to a more serious problem of alcohol abuse . . . ." The court then discussed the procedural context of the petitioner's motion: "The instant petition for restoration of parental guardianship was filed by [the petitioner] on November 20, 2020. In order to prevail on this petition, a parent must demonstrate that the factors that resulted in the removal of the parent as guardian have been resolved satisfactorily. The parent is entitled to a presumption that reinstatement of guardianship rights is in the best interest of the child."

The court next summarized the evidence and made findings with respect to whether the petitioner had resolved the reasons for her removal as a guardian. Specifically, the court noted that the petitioner had entered an intensive outpatient therapy program in March, 2019, and transitioned to a "sober house" in April, 2019, where she remained until September 5, 2020. The court stated that her record at both programs was exemplary and that the house manager of the sober house described the petitioner as "a model resident." The court also indicated that the petitioner continued to attend Alcoholics Anonymous (AA) meetings and had maintained her sobriety since January, 2020. Additionally, the petitioner obtained full-time employment, had secure housing, and was in a stable relationship. In conclusion, the court stated: "This court is under no illusions about [the petitioner's] past history and long struggle with alcohol. The court, however, is satisfied that she has demonstrated a reasonable period of sobriety and is able to meet the needs of . . . Paulo. The court finds that the petitioner has met her burden of proof, that the causes for removal of Paulo from her care have been satisfactorily resolved."

The court then addressed the best interests of Paulo and considered the relevant factors set forth in General Statutes § 46b-56.[7] It found that both parents were prepared to meet Paulo's needs. The court noted that Paulo consistently had expressed a desire to live with the petitioner and that for the majority of his life he had been in the care of the petitioner. In its findings, the court noted that there had been extended periods of time with little contact between Paulo and the respondent. The court acknowledged, however, that during the past two years, the respondent had "stepped up to the plate during very difficult times and provided [Paulo] a home." The court indicated that, given the

petitioner's sobriety, long-term relationship, stable housing situation, and employment, she would be able to meet Paulo's needs and provide him with stability. The court found that Paulo would be able to transfer to a school in Milford, where the petitioner lived. Finally, the court determined that Paulo would be able to transition back to the petitioner's care and not suffer undue stress in doing so.

"In balance, this court finds that it is in Paulo's best interest for physical custody to be vested in [the petitioner]. In reaching this difficult decision, the court is most persuaded by the length of time in [the petitioner's] care prior to removal, the demonstrated devotion she has shown in overcoming her demons, the recommendation of three separate [department] workers and the guardian ad litem, and finally by Paulo's own expressed wishes. Paulo is far more intelligent and grown up than his [age] would suggest. As a child becomes a teenager and [a] young adult, the court accords a greater weight to his or her wishes.

"The court is also—also knows that each parent here has a vastly different style of parenting. As Paulo enters his teenage years, the court believes that primary physical custody with [the petitioner] would be a better fit. The court would be remiss if it did not acknowledge that [the respondent] has been a good father to his son, Paulo. . . . For the following reasons, the court will grant this petition, [the petitioner and the respondent] will have joint guardianship of Paulo, primary physical custody will be vested in [the petitioner]."

After delivering its oral decision, the court recessed to provide the parties with the opportunity to come to an agreement with respect to visitation. After resuming the proceeding, the court noted on the record that the parties had been unable to reach an agreement. The court issued orders with respect to the issue of visitation.[8] At the conclusion of the proceeding, the court stated: "This court will not retain jurisdiction over any visitation issues. Any disputes or necessary modifications will be addressed to the family court."

On September 27, 2021, the respondent filed a motion to open the judgment on the ground that the petitioner had failed to comply with the court's visitation orders. The respondent additionally alleged that he had been prevented from contacting and communicating with Paulo. The respondent also filed a motion for contempt on that same day, in which he alleged that the petitioner had violated the court's orders by preventing him from visiting with Paulo. In her October 4, 2021 objection to the motion to open, the petitioner countered, inter alia, that the respondent's motion constituted an improper attempt to relitigate the matter.

The court held a hearing on the respondent's motions on October 28, 2021. Pursuant to its previous order

stating that it would not retain jurisdiction, the court dismissed the respondent's contempt motion. The court also declined to exercise jurisdiction over the respondent's motion to open the judgment. This appeal followed.[9] Additional facts will be set forth as necessary.

I

The respondent first claims that the court improperly applied a presumption that reinstatement of the petitioner's guardianship rights was in the best interests of Paulo as established by our Supreme Court in *In re Zakai F.*, 336 Conn. 272, 255 A.3d 767 (2020). Specifically, he argues that the presumption regarding best interests, and the requirement that the party opposing the reinstatement of guardianship must rebut this presumption by clear and convincing evidence, do not apply in cases between two parents and that the court improperly applied this presumption in the present case. Although we agree with the respondent that the presumption set forth in *In re Zakai F.*, supra, 288, does not apply in disputes involving two parents, we nevertheless conclude that the court did not apply this presumption in favor of the petitioner in the present case.

We begin our analysis by setting forth the applicable standard of review. The respondent contends that this claim involves the determination of the proper legal standard and warrants plenary review by this court. The petitioner maintains that this claim involves a review of the testimony and evidence and discusses both the abuse of discretion and clearly erroneous standards. We conclude that the claim raised by the respondent consists of a determination regarding the proper legal standard to be applied and an interpretation of the oral decision rendered by the court. Accordingly, we agree with the respondent that our review is plenary. See *Hartford* v. *CBV Parking Hartford, LLC*, 330 Conn. 200, 214, 192 A.3d 406 (2018) ("[w]hether the trial court applied the proper legal standard is subject to plenary review on appeal"); *Kunz* v. *Sylvain*, 159 Conn. App. 730, 748, 123 A.3d 1267 (2015) ("[w]e apply a plenary standard of review to the issue of whether the correct legal standard was used by the trial court"); see also *Cunningham* v. *Cunningham*, 204 Conn. App. 366, 373, 254 A.3d 330 (2021) (plenary review applies to interpretation of judgment); *In re Jacquelyn W.*, 169 Conn. App. 233, 241, 150 A.3d 692 (2016) (interpretation of court's memorandum of decision presents question of law subject to plenary review).

A review of the relevant legal principles will facilitate our discussion. The present case involves the restoration of the guardianship rights of a parent. Guardianship of a minor is statutorily defined as "(A) The obligation of care and control; (B) the authority to make major decisions affecting the minor's education and welfare, including, but not limited to, consent determinations

regarding marriage, enlistment in the armed forces and major medical, psychiatric or surgical treatment; and (C) upon the death of the minor, the authority to make decisions concerning funeral arrangements and the disposition of the body of the minor . . . ." General Statutes § 45a-604 (5); see also *In re Adelina A.*, 169 Conn. App. 111, 121 n.12, 148 A.3d 621, cert. denied, 323 Conn. 949, 169 A.3d 792 (2016); *In re Michelle G.*, 52 Conn. App. 187, 192, 727 A.2d 226 (1999).

Our statutes further provide that "[t]he father and mother of every minor child are joint guardians of the person of the minor, and the powers, rights and duties of the father and the mother in regard to the minor shall be equal. If either father or mother dies or is removed as guardian, the other parent of the minor child shall become the sole guardian of the person of the minor." General Statutes § 45a-606; see also *Stevens' Appeal*, 157 Conn. 576, 577, 255 A.2d 632 (1969) (married parents of child, by statute, are joint guardians of child).

Our statutes and rules of practice provide mechanisms to remove an individual, including a parent, as the guardian of a minor. See, e.g., General Statutes §§ 45a-610 and 46b-129 (j) (2); Practice Book § 35a-12A. Likewise, opportunities exist for the reinstatement of a guardian. General Statutes §§ 45a-611 and 46b-129 (n); Practice Book §§ 35a-20 and 35a-20A; see, e.g., *In re Adelina A.*, supra, 169 Conn. App. 120–21; cf. General Statutes § 45a-611 (d) (parent removed as guardian may not petition for reinstatement if court established permanent guardianship); General Statutes § 45a-616a (Probate Court may appoint individual as permanent guardian for minor following removal of parent as guardian).

Our Supreme Court has stated that § 46b-129 (n) is similar to § 45a-611; *In re Zakai F.*, supra, 336 Conn. 285 n.11; and that these statutes provide the procedures through which a parent may seek reinstatement of guardianship of his or her child. See *In re DeLeon J.*, 290 Conn. 371, 379, 963 A.2d 53 (2009). Section 46b-129 (n) provides: "If the court has ordered legal guardianship of a child or youth to be vested in a suitable and worthy person pursuant to subsection (j) of this section, *the child's or youth's parent or former legal guardian may file a motion to reinstate guardianship of the child or youth in such parent or former legal guardian.* Upon the filing of such a motion, the court may order the [commissioner] to investigate the home conditions and needs of the child or youth and the home conditions of the person seeking reinstatement of guardianship, and to make a recommendation to the court. A party to a motion for reinstatement of guardianship shall not be entitled to court-appointed counsel or representation by Division of Public Defender Services assigned counsel, except as provided in section 46b-136. *Upon finding that the cause for the removal of guardianship no*

*longer exists, and that reinstatement is in the best interests of the child or youth, the court may reinstate the guardianship of the parent or the former legal guardian.* No such motion may be filed more often than once every six months." (Emphasis added.) See also Practice Book § 35a-20.[10] Guided by these principles, we address each aspect of the respondent's claim in turn.

### A

We first consider the respondent's assertion that, in a reinstatement of guardianship rights case, the presumption that reinstatement is in the best interests of the child does not apply in a dispute between two parents. We agree with the respondent that this presumption does not apply in such a situation.

By way of background, we note that our Supreme Court recently conducted a detailed analysis of "whether there is a constitutional presumption that reinstatement of guardianship rights to a parent . . . is in the best interests of the child and, if so, whether a heightened standard of proof is required to rebut that presumption." (Footnote omitted.) *In re Zakai F.*, supra, 336 Conn. 275–76. In that case, the respondent mother voluntarily agreed that her sister, the petitioner, would care for the respondent's minor child, Zakai, after an incident in which the boyfriend of the respondent mother physically assaulted Zakai. Id., 277. When the respondent mother, less than one week later, requested that the petitioner return Zakai to her care, the petitioner sought immediate temporary custody and the removal of the respondent mother's guardianship rights in Probate Court. Id. The Probate Court granted the petitioner's custody request but did not rule on her motion for removal of the guardianship rights of the respondent mother. Id. The matter was transferred to the family division of the Superior Court and, eventually, to the juvenile division of the Superior Court.[11] Id., 277–78. After various proceedings and the completion of a guardianship study, the court approved an agreement of the parties that guardianship was transferred to the petitioner. Id., 278–79.

Approximately nine months later, the respondent mother moved to reinstate her guardianship rights to Zakai. Id., 279. The court ordered another guardianship study pursuant to § 46b-129 (n). In its memorandum of decision, the court concluded that the respondent mother had ameliorated the reasons and events that had prompted the agreement to transfer guardianship of Zakai to the petitioner. Id., 280. The court determined, however, by a fair preponderance of the evidence, that it was not in Zakai's best interests to return to the care of the respondent mother. Id., 282.

On appeal, our Supreme Court noted that, once a parent established that the cause for removal no longer

existed, a presumption that reinstatement of that parent's guardianship rights was in the child's best interests was constitutionally required. Id., 288. To support this conclusion, the court first reviewed the language of the relevant statute and rule of practice. Id., 284–85. "We begin with the text of § 45a-611 (b), which provides in relevant part: If the court determines that the factors which resulted in the removal of the parent have been resolved satisfactorily, the court may remove the guardian and reinstate the parent as guardian of the person of the minor, if it determines that it is in the best interests of the minor to do so. . . . Nothing in the language of the statute itself requires a presumption that reinstatement with a parent is in the best interests of the child.

"Practice Book § 35a-20 also governs the procedure by which a parent can seek reinstatement of guardianship. Practice Book [2020] § 35a-20 (d) provides: The hearing on a motion for reinstatement of guardianship is dispositional in nature. The party seeking reinstatement of guardianship has the burden of proof to establish that cause for transfer of guardianship to another person or agency no longer exists. The judicial authority shall then determine if reinstatement of guardianship is in the child's or youth's best interest. Practice Book [2020] § 35a-20, like § 45a-611, does not address whether there is a presumption in place."[12] (Internal quotation marks omitted.) Id., 284–85; see generally *In re Avirex R.*, 151 Conn. App. 820, 828, 96 A.3d 662 (2014) (rules of practice implement relevant statutory scheme).

The court then looked to analogous cases, namely, *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 420 A.2d 875 (1979), which relied on *Claffey* v. *Claffey*, 135 Conn. 374, 64 A.2d 540 (1949). *In re Zakai F.*, supra, 336 Conn. 285–88. Specifically, the court noted that in *Claffey* v. *Claffey*, supra, 377, it had explained: "[A]t least, where the controversy is not between the father and the mother . . . the mother has a prior right to custody unless the circumstances are such that to give it to her would not be for the best interests of the child." (Internal quotation marks omitted.) *In re Zakai F.*, supra, 287. Similarly, our Supreme Court relied on the following statement from *In re Juvenile Appeal (Anonymous)*, supra, 662: "[I]n any controversy between a parent and [anyone who was not a parent—including relatives, friends or child care agencies] the parent . . . should have a strong initial advantage, to be lost only [when] it is shown that the child's welfare plainly requires custody to be placed in the [other party]." (Internal quotation marks omitted.) *In re Zakai F.*, supra, 287–88.

Ultimately, our Supreme Court concluded that, with respect to a motion to reinstate guardianship rights, a parent who successfully demonstrated that the factors that resulted in his or her removal as guardian were

resolved satisfactorily is entitled to a presumption that reinstatement is in the best interests of the child. Id., 288. The cases primarily relied on by our Supreme Court in reaching this conclusion contained a caveat that this presumption applies only when the matter to be resolved is not between the mother and the father. See *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 662; *Claffey* v. *Claffey*, supra, 135 Conn. 377.[13] It then determined that the burden shifted to the nonparent to rebut the presumption in reinstatement of guardianship cases. *In re Zakai F.*, supra, 336 Conn. 289. Finally, our Supreme Court held that a nonparent must rebut the presumption by clear and convincing evidence. Id., 306.

On the basis of the reasoning and rationale set forth by our Supreme Court in *In re Zakai F.*, supra, 336 Conn. 272, a parent who has filed a motion to reinstate his or her guardianship rights and who has demonstrated that the reasons that led to the removal of that parent's guardianship rights have been resolved satisfactorily is entitled to a presumption that reinstatement is in the best interests of the child when the current guardian is a nonparent. We agree with the respondent, however, that this presumption does not apply in a dispute between two parents.

B

We now turn to the respondent's claim that the court improperly applied the presumption that reinstatement of the petitioner's guardianship rights was in the best interests of Paulo. Specifically, the respondent contends that the court applied an incorrect legal standard and that the appropriate remedy is a new trial. After a careful review of the court's memorandum of decision, we conclude that it did not apply this presumption in favor of the petitioner. Accordingly, the respondent's claim must fail.

At the outset of its oral decision, the court stated: "The instant petition for restoration of parental guardianship was filed by [the petitioner] on November 20, 2020. In order to prevail on this petition, a parent must demonstrate that the factors that resulted in the removal of the parent as guardian have been resolved satisfactorily. *The parent is entitled to a presumption that reinstatement of guardianship rights is in the best interest of the child.* In addition to the restoration of guardianship, [the petitioner] is seeking physical custody of Paulo as well as the restoration of parental guardianship." (Emphasis added.) The court then determined that the petitioner had met her burden of establishing that the cause for the removal of her guardianship rights had been satisfactorily resolved. Ultimately, the court reinstated the petitioner's guardianship rights and awarded her primary custody of Paulo.

With respect to the best interests analysis,[14] the court considered the statutory factors set forth in § 46b-56

(c), and discussed the most relevant factors, namely, the temperament and development needs of the child, the capacity and disposition of the parents to understand and meet the needs of the child, any relevant and material information obtained from the child, including his informed preferences, the past and current interaction and relationship of the child with each parent, the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent, any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute, the length of time that the child has lived in a stable and satisfactory environment, and the stability of the child's existing or proposed residences. See General Statutes § 46b-56 (c) (2), (3), (4), (6), (7), (8), (11) and (12).

After discussing and balancing these factors, the court concluded that it was in Paulo's best interests to restore the petitioner's guardianship rights and award her physical custody. In doing so, the court expressly relied on the length of time Paulo had been in the petitioner's care prior to the removal of her guardianship rights, her "demonstrated devotion . . . in overcoming her demons," the recommendations of the guardian ad litem and various employees of the department, Paulo's own expressed wishes, and the petitioner's parenting style as Paulo entered his teenage years. At no point in its analysis did the court, explicitly or implicitly, address, mention, or apply a presumption in favor of the petitioner. Rather, the court considered and balanced the most relevant factors set forth in § 46b-56 (c) in accordance with our law.

The respondent points to the court's statement that "[t]he parent is entitled to a presumption that reinstatement of guardianship rights is in the best interest of the child." We acknowledge that this is not a precisely accurate statement of our law. In cases in which a parent seeks to restore his or her guardianship rights involving a nonparent, be it another family member, third party, or government agency, the statement made by the court would be accurate. See *In re Zakai F.*, supra, 336 Conn. 288. In a restoration of guardianship rights case involving two parents, however, no such presumption exists. See part I A of this opinion.

The respondent, as the appellant, bears the burden of establishing that the court applied an incorrect legal standard; we will not engage in speculation or presume such error. See, e.g., *DiBerardino* v. *DiBerardino*, 213 Conn. 373, 385, 568 A.2d 431 (1990); *Corneroli* v. *Kutz*, 183 Conn. App. 401, 416 n.4, 193 A.3d 64 (2018). In fact, in a similar context, our Supreme Court recognized that a court's misstatement regarding the correct legal standard does not require a reversal and new proceeding in every instance. In *Cookson* v. *Cookson*, 201 Conn. 229, 231–33, 514 A.2d 323 (1986), the parties were

involved in a custody and visitation dispute. The plaintiff mother appealed from the decision of the trial court awarding custody to the defendant father and granting her specific visitation rights with certain conditions imposed. Id., 233. In its memorandum of decision, the court had referred to a " 'least detrimental alternative' standard . . . ." Id., 241. In her appeal, the plaintiff claimed, inter alia, that the court had failed to apply the statutorily mandated best interests standard. Id.

In rejecting this claim, our Supreme Court reasoned: "The trial court was, however, obviously searching to accommodate the best interests of the children, *and on the record before us we have no reason to believe that it did not ultimately apply the best interests of the child standard to its decision.* Least detrimental alternative was manifestly alternate phraseology utilized by the trial court to describe the compelling concerns involved in the difficult custody decision it faced. Significantly, later in its memorandum of decision, the trial court recognized that the defendant was asking the court to consider the present best interests of the children and, in promulgating its orders, the trial court summarized its conclusions in the following manner. Return to the home of the parent who obstructed the children's relationship with their father, who permitted someone other than herself to impose humiliating and frightening punishments for relatively minor misbehaviors, and who lied and defied court orders, is inconsistent with the best interests of these children.

"*The fact that the least detrimental alternative was mentioned in the trial court's decision as a desirable goal and may have culminated in the same result as the statutory criteria does not require a conclusion that the court based its decision on that standard.* Any ambiguity notwithstanding, and no clear evidence to the contrary having been introduced, it was implicit in the trial court's award that it was based on the statutory standard of the best interests of the child." (Emphasis added; internal quotation marks omitted.) Id., 241–42.

In the present case, although the court mentioned the best interests presumption that applies in many, but not all, restoration of guardianship disputes, we are unable to discern any example of the court applying that presumption. Rather, the court carefully considered and applied the relevant statutory criteria in determining whether the restoration of the petitioner's guardianship rights was in the best interests of Paulo. See, e.g., *D'Amato* v. *Hart-D'Amato*, 169 Conn. App. 669, 678, 152 A.3d 546 (2016) (statutorily incumbent on court issuing orders regarding custody and visitation to be guided by best interests of child).

As this court has observed: "Although the court's oral decision does not clearly set forth the defendant's burden of proof, *we nevertheless interpret the decision by considering it in its entirety, rather than by consid-*

*ering certain statements in artificial isolation.*"
(Emphasis added.) *State* v. *Anderson*, 163 Conn. App.
783, 796, 134 A.3d 741, cert. denied, 321 Conn. 909, 138
A.3d 931 (2016); see also *In re Jason R.*, 306 Conn. 438,
453, 51 A.3d 334 (2012) (opinion must be read in its
entirety, without particular portions read in isolation,
to determine parameters of its holding, and ambiguous
trial record was read to support, rather than contradict,
trial court's judgment); *Bisson* v. *Wal-Mart Stores, Inc.*,
184 Conn. App. 619, 630 n.11, 195 A.3d 707 (2018) ("this
court will presume [that] trial court acted properly in
performance of its duties"). For these reasons, we reject
the respondent's assertion that the court applied a pre-
sumption in favor of the petitioner when it determined
that the restoration of her guardianship rights was in
the best interests of Paulo.

## II

The respondent next claims that the court incorrectly
determined that the factors that led to the removal of
the petitioner as guardian of Paulo had been resolved.
Specifically, he argues that the court failed to identify
all of the factors that led to the petitioner's removal and
improperly found that these factors had been resolved
satisfactorily. We disagree.

The following additional facts are necessary for our
discussion of this claim. The petitioner has a long his-
tory of alcohol abuse. On February 17, 2019, the depart-
ment received a referral alleging physical and educa-
tional neglect of Paulo. Specifically, this referral alleged
that the petitioner was homeless and abusing alcohol
and that Paulo had not been enrolled in school for three
weeks. The department commenced an investigation,
and the petitioner admitted to having been evicted from
her apartment on February 1, 2019. She and Paulo had
moved to another town, but, due to her homelessness,
the petitioner had been unable to register Paulo in a
new school. Paulo also stated that the petitioner drove
an automobile while intoxicated and that he had to ask
her to "stop driving fast." The petitioner and Paulo had
been staying with a family member, but, as a result of
the petitioner's alcohol abuse, they were asked to leave.

At a subsequent meeting, a member of the department
discussed the issues of homelessness and alcohol abuse
with the petitioner. The petitioner admitted to consum-
ing alcohol in the presence of Paulo for "coping pur-
poses . . . ." Furthermore, the petitioner acknowl-
edged the concern of the department with respect to
the lack of stable housing for herself and Paulo. These
concerns—the petitioner's homelessness and alcohol
use—were identified specifically as the reasons for the
department's request for an out of home placement.[15]
The court determined that Paulo was neglected and
uncared for and vested his temporary care and custody
in Tachelle, the respondent's adult daughter.

Following the petitioner's motion for reinstatement of her guardianship rights, the department conducted a study dated February 22, 2021. This study documented the petitioner's extensive history with the department, beginning in 2009. At the time of this study, the petitioner lived in a condominium with her boyfriend. Paulo had his own room at this residence, which was described as "nicely furnished, clean and there is ample food . . . [and no] safety concerns were noted . . . ."

The study also noted that the petitioner had "successfully completed substance abuse treatment." Specifically, she completed an intensive outpatient program and then resided in a sober house. The petitioner "obtained a sponsor right away, jumped into the [AA] program by attending daily meetings and participated in a 12-step program. She also worked very close with her counselor twice a week her entire time. Her drug/alcohol testing are all negative." The petitioner's psychotherapist reported that she participated in her treatment, demonstrated her willingness and openness to work through her issues, and recognized the seriousness of her addiction and the resulting consequences. The psychotherapist specifically noted the petitioner's "dedication to regaining her role in [Paulo's] life and reuniting with him." Finally, the petitioner's sponsor indicated that the petitioner had been compliant with her sobriety services and that she continued to grow and live a good life that she shared with Paulo.

In the "Assessment and Recommendation" section of the study, it was noted that the petitioner "needed to address her alcohol addiction and needed to be in a stable situation before motioning the court for [r]einstatement." With respect to the former, the study observed that the petitioner's clinicians had reported her to be rehabilitated and doing well in her recovery. As to the latter, the study stated that the petitioner had obtained steady employment and stable housing. It concluded: "[The department], based on the information available at this time recommends [that] the petition for reinstatement be granted."

As we have noted, a parent seeking reinstatement of guardianship rights must demonstrate that the factors that resulted in the removal of those rights have been resolved satisfactorily and that it is in the best interests of the child to reinstate those rights. *In re Brian W.*, 124 Conn. App. 787, 792, 6 A.3d 136 (2010). "The award of the custody of a minor child is a matter within the sound discretion of the trial court. . . . We review the award to determine whether that discretion has been abused and whether the trial court, in the exercise of its discretion, has overlooked or misapplied some established principle of pertinent law. . . . When the factual basis of the trial court's decision is challenged on appeal, the role of this court is to determine whether the facts set out in . . . the decision . . . are clearly

erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) Id., 792–93; see generally *In re Patricia C.*, 93 Conn. App. 25, 32–33, 887 A.2d 929, cert. denied, 277 Conn. 931, 896 A.2d 101 (2006).[16]

A

The respondent first argues the court failed to identify all of the factors that led to the petitioner's removal. Specifically, he contends that the court incorrectly found that only the petitioner's alcohol abuse and homelessness constituted the bases for the loss of her guardianship rights and ignored other matters set forth in the order of temporary custody and neglect petitions, such as allegations of physical neglect, a history of poor decisions related to proper parenting, inadequate supervision of Paulo, family violence matters, and her criminal history. We are not persuaded.

At the outset of its oral decision, the court stated that the present matter originated from a neglect petition and that an order of temporary custody was issued on February 26, 2019. It then identified the two reasons for Paulo's removal from the petitioner's care: "[T]he immediate problem of homelessness, secondary to a more serious problem of alcohol abuse on the part of [the petitioner]. Paulo was adjudicated neglected on the basis of homelessness, and custody and guardianship was transferred to [the respondent] on June 10 of 2019."

We acknowledge that the affidavits attached to the petitions filed by the commissioner contain a detailed recitation of the petitioner's past parenting difficulties and her involvement with the criminal justice system. A review of the entire record, however, supports the court's determination that the two reasons for the loss of the petitioner's guardianship rights were her homelessness and alcohol abuse. Those exigent matters caused the department, acting through the commissioner, to take action and initiate the proceedings that led to the removal of the petitioner's guardianship rights and transfer of custody to Tachelle and, eventually, to the respondent. Although the record referenced other matters, we conclude that the court properly identified the two bases for the removal of the petitioner's guardianship rights of Paulo.

B

The respondent next argues that the court incorrectly found that the factors that led to the removal of the

petitioner's guardianship rights had been resolved satisfactorily. Specifically, he contends that her housing situation remained uncertain because she had moved in with an individual with whom she had recently entered into a romantic relationship and that there was "scant" evidence with respect to her sobriety. We conclude that the court's findings regarding the satisfactory resolution of the reasons for the loss of the petitioner's guardianship rights are not clearly erroneous, because they are supported by the evidence, and that the court properly concluded that the factors that led to the loss of the petitioner's guardianship rights had been resolved.

Yolanda Kearney, a social worker employed by the department, testified that the department supported the reinstatement of the petitioner's guardianship rights. The petitioner testified that she engaged in recovery efforts with the ultimate goal of regaining her guardianship rights and custody of Paulo. In order to achieve this, the petitioner went to an intensive outpatient treatment center with a structured environment to learn the tools necessary for her to establish and maintain her sobriety. A treating clinician at the intensive outpatient treatment center testified that the petitioner was an "active participant" in the program following her self-referral. The clinician further stated that the petitioner successfully had completed fourteen of the twenty-four sessions of the program and then transferred to the sober house due, in part, to the emergence of the COVID-19 pandemic. While at this treatment center, the petitioner's weekly drug tests were negative for alcohol, and the clinician indicated that the petitioner had "displayed insight regarding the consequences of her past use [of alcohol] and was highly motivated to maintain sobriety."

The petitioner then went to a sober house, which afforded her the opportunity to attend group and individual counseling and daily AA meetings at various locations. Through these processes, the petitioner learned to identify the specific triggers that led to her abuse of alcohol. The manager of the sober house testified that all of the petitioner's random drug tests were negative. The manager further described the petitioner as a "model resident to have at the house. . . . She did everything that we required of her and beyond. She obtained—she obtained a job right away and started becoming a contributing member of society and was working towards her goals immediately of getting her son back in her life." The manager also noted that the petitioner helped other residents by providing them with transportation and speaking with new members. The petitioner actively engaged with her counselor. After leaving the sober house, the petitioner returned several times to participate in weekly dinners as a former resident.

The petitioner stated that she had been sober since

January, 2020. She also continued to attend weekly AA meetings and described her sobriety as "pretty solid . . . ." The petitioner further stated that she was residing with her fiancé in a two bedroom condominium. She indicated that she had obtained employment as an office administrator, earning $600 per week.

In his principal and reply briefs, the respondent contends that the petitioner's housing situation has not been resolved because "she moved into the apartment of a man who she met a few months earlier" and that she would be unable to afford that apartment on her own. The respondent further argues that "the evidence of [the petitioner's] sobriety is scant" and points to her history of drug abuse and her criminal record. These arguments, distilled to their essence, constitute a request for this court to reweigh the evidence and reach a contrary conclusion to that of the trial court. Our role, however, is more limited. "In the absence of clearly erroneous factual findings that are material to the decision, the question is not simply whether there is some evidence that would support the granting of the petition. Rather, we must review whether, in light of the facts found by the court and the evidence it credited, the only rational outcome would have been for the court to grant the petition. *We cannot reweigh the evidence or reevaluate the credibility of witnesses* to determine whether, in our own view, the evidence could have warranted [the denial of the motion to reinstate the petitioner's guardianship rights]. *Every reasonable presumption must be made in favor of the trial court's ruling . . . . As indicated, we are bound by the trial court's subordinate factual findings, which are reviewable only for clear error.*" (Citation omitted; emphasis added; footnote omitted.) *In re Mariana A.*, 181 Conn. App. 415, 428–29, 186 A.3d 83 (2018); see also *In re Quanitra M.*, 60 Conn. App. 96, 106, 758 A.2d 863 (function of appellate court is to review, not retry, proceedings of trial court), cert. denied, 255 Conn. 903, 762 A.2d 909 (2000). Stated differently, "we will not scrutinize the record to look for reasons supporting a different conclusion than that reached by the trial court." *In re Shane M.*, 318 Conn. 569, 593, 122 A.3d 1247 (2015). In light of the evidence before the court, we cannot conclude that its finding that the petitioner had resolved the issues that led to the removal of her guardianship rights was clearly erroneous.

### III

The respondent next claims that the court erroneously found that reinstatement of the petitioner's guardianship rights was in the best interests of Paulo. Specifically, he argues that the best interests of Paulo were not supported due to the loss of educational opportunities and lack of evidence that Paulo had thrived in the first ten years of his life when he had resided with the petitioner. We conclude that the evidence was sufficient

to support the court's findings that the restoration of the petitioner's guardianship rights and transfer of custody to the petitioner were in Paulo's best interests.

This court recently has stated: "[Section] 46b-56 provides the legal standard for determining child custody issues. The statute requires that the court's decision serve the child's best interests. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . Our Supreme Court has consistently held in matters involving child custody . . . that while the rights, wishes and desires of the parents must be considered it is nevertheless the ultimate welfare of the child [that] must control the decision of the court. . . . In making this determination, the trial court is vested with broad discretion which can . . . be interfered with [only] upon a clear showing that that discretion was abused. . . . Thus, a trial court's decision regarding child custody must be allowed to stand if it is reasonably supported by the relevant subordinate facts found and does not violate law, logic or reason. . . . Under § 46b-56 (c), the court, in determining custody, must consider the best interests of the child and, in doing so, may consider, among other factors, one or more of the [seventeen] factors enumerated in the provision.

"[T]he authority to exercise the judicial discretion [authorized by § 46b-56] . . . is not conferred [on] this court, but [on] the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one [that] discloses a clear abuse of discretion can warrant our interference." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Coleman* v. *Bembridge*, 207 Conn. App. 28, 47–49, 263 A.3d 403 (2021); see also *In re Averiella P.*, 146 Conn. App. 800, 803, 81 A.3d 272 (2013); *In re Karl J.*, 110 Conn. App. 22, 26, 954 A.2d 231, cert. denied, 289 Conn. 954, 961 A.2d 420 (2008).

Francis Santoro, a Bridgeport police officer, testified that he spoke with a visibly upset Paulo on May 27, 2021, following an incident involving the respondent. Kearney testified that Paulo had informed her that he wished to live with the petitioner. The department's "Court Study for Reinstatement of Guardian" noted that Paulo had lived with the petitioner for most of his life and that the petitioner presented as "stable and appears to have Paulo's best interest at heart." The study further concluded that Paulo appeared to have a "very good relationship" with both parents, but he had expressed a desire to live with the petitioner.[17] The guardian ad litem testified[18] that Paulo appeared to be much more relaxed at the petitioner's condominium where he is engaged in a "very happy routine . . . ." Paulo

expressed no reservations about changing schools. Ultimately, the court concluded that restoration of the petitioner's guardianship rights and awarding her primary custody were in Paulo's best interests.[19]

The petitioner testified that Paulo did not have his own room, kept his clothes in black plastic bags, and slept on a couch while residing with the respondent. She further stated that during her visits with Paulo, they would go to the beach and use "boogie board[s]," kayaks, and "long boards." The two would ride bicycles, play basketball, exercise at a gym, cook, and bake together. The petitioner also helped Paulo with his math homework.

The respondent argues that there was no evidence to support the court's finding that Paulo had thrived during the first ten years of his life when he lived with the petitioner. We do not agree. The petitioner testified that Paulo was an excellent student during their six years in Berlin. Paulo also participated in numerous sports, including football, basketball, and wrestling. In a 2019 study, the department concluded Paulo was a "fairly healthy child" who had excelled at school. The study also noted that Paulo interacted well with family and his peers in school. "Paulo appears to be a typical preteen boy that is happy and loving. He appears to be knowledgeable about his surroundings and has experiences that have matured him a little earlier than most children his age." The evidence demonstrated that, despite the petitioner's difficulties, Paulo had done well in her care prior to the loss of her guardianship rights.

The respondent also contends that the court's "implicit finding that Paulo's transfer from a select, admission-only gifted and talented program in Bridgeport to the Milford school system is in Paulo's best interest is clearly erroneous, in that there is no record evidence to support it." We disagree with this assertion.

First, the guardian ad litem testified that other public schools had programs that would challenge Paulo and provide him with extra assistance in his educational pursuits. The guardian ad litem also described Paulo as "very smart" and "a voracious reader." The respondent's argument that there was no evidence in the record regarding a school transfer, therefore, is unavailing. Second, we iterate that the best interests determination is not based on a single factor but, rather, consideration of those set forth in § 46b-56 (c). See, e.g., *Weaver* v. *Sena*, 199 Conn. App. 852, 864, 238 A.3d 103 (2020) (court does not abuse its discretion when it focuses on certain § 46b-56 (c) factors in best interests analysis); *Watrous* v. *Watrous*, 108 Conn. App. 813, 825, 949 A.2d 557 (2008) (language of § 46b-56 (c) does not compel consideration of any particular factor or factors when determining best interests). For these reasons, we reject the respondent's contention that the court's findings were clearly erroneous and that it abused its discretion

with respect to its conclusion regarding Paulo's best interests.

IV

The respondent's final claim is that the court improperly dismissed his motion to open the judgment. Specifically, he contends that the court improperly failed to consider its merits. Under the facts and circumstances of this case, we conclude that the court properly declined to exercise its jurisdiction to consider the arguments set forth in the respondent's motion to open.

We begin with our standard of review. "We review a trial court's ruling on motions to open under an abuse of discretion standard. . . . Under this standard, we give every reasonable presumption in favor of a decision's correctness and will disturb the decision only where the trial court acted unreasonably or in a clear abuse of discretion." (Internal quotation marks omitted.) *People's United Bank, National Assn.* v. *Purcell*, 187 Conn. App. 523, 525–26, 202 A.3d 1112 (2019). Additionally, we note that "[t]he manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did. . . . When exercising its discretion on a motion to open, the court may consider the totality of the circumstances under which the motion to open is filed . . . ." (Citations omitted; internal quotation marks omitted.) *Zilkha* v. *Zilkha*, 167 Conn. App. 480, 494, 144 A.3d 447 (2016).

The following additional facts are necessary for our discussion of this claim. At the conclusion of the September 8, 2021 hearing, the court reinstated the petitioner's guardianship rights, awarded her primary physical custody, and issued orders regarding visitation. The court then stated: "Let me add . . . as long as we're still on the record [that this] court will not retain jurisdiction over any visitation issues. Any disputes or necessary modifications will be addressed to the family court."

On September 27, 2021, the respondent filed a motion to open the judgment pursuant to Practice Book § 17-4.[20] In this motion, he alleged that the petitioner had disregarded the court's visitation orders and that he had been unable to contact and communicate with Paulo. In support of these allegations, the respondent stated that the petitioner had sent him a text claiming that she lacked the resources to transport Paulo to a scheduled visitation with the respondent on September 15, 2021. The respondent further insisted that the petitioner had not permitted him to have any contact with Paulo. In conclusion, the respondent argued that the petitioner's conduct following her restoration of her guardianship rights and physical custody of Paulo demonstrated her lack of regard for the court's orders and that she will "apply her best efforts to destroy the relationship between [the respondent] and his son."

On October 4, 2021, the petitioner filed an objection to the respondent's motion to open the judgment. She argued, inter alia, that the respondent was free to file postjudgment motions in the family division of the Superior Court and that the respondent was attempting to relitigate the matter.

The court conducted a hearing on October 28, 2021. At the outset, the court discussed a motion for contempt that the respondent had filed. The court dismissed that motion on the basis of its prior directive that it had not retained jurisdiction. The court then addressed the respondent's motion to open, which it described as a "motion to modify the disposition." It then stated: "If you intend to file a petition for restoration of parental guardianship, which we call an RPG, you need to do that in proper form, you need to file the petition, it needs to be served, and then the court will order [the department] to do a study."[21] The court then offered to communicate directly with the family court to resolve any questions regarding the matter. After a further colloquy with the respondent's counsel and the guardian ad litem, the court indicated that if the respondent wanted to modify the September 8, 2021 order so that he had physical custody, he would need to file a new petition. The court further explained that "[a]nything that has to do with custody—anything that has to do with custody and guardianship, we have to keep. We keep that because we entered the orders here. But once we enter a visitation order and we do not retain jurisdiction, the visitation part will go to the family court . . . . So . . . the motion to modify is dismissed. You need to file a new petition."

In his motion to open, the respondent alleged that the petitioner had disregarded the court's visitation orders. In response, the court indicated that it would not exercise its jurisdiction to consider claims regarding visitation, as it previously had indicated that such matters would need to be presented to the family court. The respondent also requested that the court award him sole custody of Paulo. The court responded that if the respondent wanted to pursue that goal, he would be required to file a motion to modify custody, the motion would need to be served, and a study would need to be completed before such an order could issue. In short, the court declined to consider altering or modifying its custody order on the basis of conduct alleged to have occurred *after* the court's September 8, 2021 order reinstating the petitioner's guardianship rights and awarding her primary physical custody of Paulo. Instead, the court provided the respondent with options to pursue his claims, namely, by raising the visitation issue with the family court and filing a new motion to modify custody. On the basis of the totality of these circumstances, we conclude that the court did not abuse its discretion in dismissing the respondent's

motion to open.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons who have a proper interest therein and upon order of the Appellate Court.

** July 18, 2022, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 46b-129 (j) (2) provides in relevant part: "Upon finding and adjudging that any child or youth is uncared for . . . the court may . . . (B) vest such child's or youth's legal guardianship . . . with any other person or persons found to be suitable and worthy of such responsibility by the court, including, but not limited to, any relative of such child or youth by blood or marriage . . . ."

[2] See General Statutes § 46b-120 (6) (A) (child who is homeless may be found uncared for).

[3] In a court study prepared by the department, it was noted that, "[i]n June, 2019, [Paulo] came to live with [the respondent] as [Tachelle] could no longer care for him."

[4] See General Statutes § 46b-129 (n) (parent may file motion to reinstate guardianship).

[5] "General Statutes § 46b-1 prescribes family relations matters within the jurisdiction of the Superior Court. . . . Juvenile matters, as provided in General Statutes § 46b-121, include all proceedings concerning uncared-for, neglected or abused children within this state . . . ." (Citation omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *In re Teagan K.-O.*, 335 Conn. 745, 760, 242 A.3d 59 (2020).

[6] See General Statutes § 46b-129 (n) (court may order commissioner to investigate home conditions and needs of child or youth, and home conditions of person seeking reinstatement of guardianship, and to make recommendations to court).

[7] General Statutes § 46b-56 (c) provides: "In making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so, may consider, but shall not be limited to, one or more of the following factors: (1) The physical and emotional safety of the child; (2) the temperament and developmental needs of the child; (3) the capacity and the disposition of the parents to understand and meet the needs of the child; (4) any relevant and material information obtained from the child, including the informed preferences of the child; (5) the wishes of the child's parents as to custody; (6) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (7) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (8) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (9) the ability of each parent to be actively involved in the life of the child; (10) the child's adjustment to his or her home, school and community environments; (11) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (12) the stability of the child's existing or proposed residences, or both; (13) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (14) the child's cultural background; (15) the effect on the child of the actions of an abuser, if any domestic violence, as defined in section 46b-1, has occurred between the parents or between a parent and another individual or the child; (16) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (17) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision."

[8] The court ordered that, effective September 8, 2021, the respondent would have visitation with Paulo every Wednesday at 5 p.m. through Thursday morning and that the petitioner was responsible for providing transportation. Effective September 17, 2021, the respondent would have visitation with Paulo on alternating weekends, commencing on Friday at 5 p.m. through Sunday at 6 p.m. and the respondent was responsible for transportation.

[9] The guardian ad litem and the attorney for the minor child both have adopted the appellate brief and position of the petitioner.

[10] Practice Book § 35a-20 provides: "(a) Whenever a parent whose guardianship rights to a child or youth were removed and transferred to another person or an agency other than the [department] by the Superior Court for juvenile matters seeks reinstatement as that child's or youth's guardian, the parent may file a motion for reinstatement of guardianship with the court that ordered the transfer of guardianship.

"(b) The clerk shall assign such motion a hearing date and issue a summons to the current guardian and the nonmoving parent or parents. The moving party shall cause a copy of such motion and summons to be served on the child's or youth's current legal guardian(s) and the nonmoving parent or parents.

"(c) Before acting on such motion, the judicial authority shall determine if the court still has custody jurisdiction and shall request, if necessary, that the [commissioner] conduct an investigation and submit a home study that sets forth written findings and recommendations before rendering a decision.

"(d) The hearing on a motion for reinstatement of guardianship is dispositional in nature. If the parent seeking reinstatement of guardianship demonstrates that the factors that resulted in the parent's removal as guardian are resolved satisfactorily, the parent is entitled to a presumption that reinstatement is in the best interest of the child or youth. The party opposing reinstatement of guardianship has the burden of proof to rebut this presumption by clear and convincing evidence."

[11] "To promote an efficient use of judicial resources, the Superior Court has been divided into four divisions: Family, civil, criminal and housing. Each division is further divided into parts." *In re Shonna K.*, 77 Conn. App. 246, 252, 822 A.2d 1009 (2003); see also *State* v. *Ledbetter*, 263 Conn. 1, 4 n.9, 818 A.2d 1 (2003) (Connecticut has unified court system and, therefore, all criminal and civil matters, including juvenile matters, fall within subject matter jurisdiction of Superior Court).

[12] We note that Practice Book § 35a-20 (d) was amended, effective January 1, 2022, to specify that a parent is entitled to a presumption, consistent with the decision in *In re Zakia F.*, supra, 336 Conn. 272. See Practice Book § 35a-20, commentary; see also footnote 10 of this opinion.

[13] The respondent's brief further directs us to the following language from *Fish* v. *Fish*, 285 Conn. 24, 939 A.2d 1040 (2008), where our Supreme Court stated: "We first note that third party custody disputes differ from those in which both parents seek custody because, in the latter case, each party possesses a constitutionally protected parental right. . . . In cases in which both parents seek custody, [n]either parent has a superior claim to the exercise of [the] right to provide care, custody, and control of the children. . . . Effectively, then, each fit parent's constitutional right neutralizes the other parent's constitutional right, leaving, generally, the best interests of the child as the sole standard to apply to these types of custody decisions. Thus, in evaluating each parent's request for custody, the parents commence as presumptive equals and a trial court undertakes a balancing of each parent's relative merits to serve as the primary custodial parent; the child's best interests [tip] the scale in favor of an award of custody to one parent or the other.

"Where the dispute is between a fit parent and a private third party, however, both parties do not begin on equal footing in respect to rights to care, custody, and control of the children. The parent is asserting a fundamental constitutional right. The third party is not. A private third party has no fundamental constitutional right to raise the children of others. Generally, absent a constitutional statute, the non-governmental third party has no rights, constitutional or otherwise, to raise someone else's child." (Citation omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) Id., 45–46.

[14] The court appears to have merged its best interests analysis with respect to the restoration of the petitioner's guardianship rights and determination of physical custody.

[15] The department specifically listed these concerns in an addendum to the order of temporary custody and neglect filed with the court.

[16] The respondent summarily asserts that this claim requires us to construe § 45a-611 and, therefore, that our review is plenary. First, despite his reference to § 45a-611, the controlling statute in this case is § 46b-129 (n). Second, we disagree with the respondent's assertion regarding plenary review. We note that the respondent also argues that "this court should conclude that *the trial court's finding regarding the factors leading to Paulo's removal from the [petitioner's] custody in February, 2019, is clearly erroneous, in that it is not supported by the evidence, or this court is left with the definite and firm conviction that a mistake has been made.*" (Emphasis added.) We agree that this standard applies and will review the reasons for the loss of guardianship rights in the present case under the clearly erroneous standard.

[17] We recognize that, "[a]lthough the child's wish is one factor for the court to consider in making that decision, it is certainly not the only one." (Internal quotation marks omitted.) *Brown* v. *Brown*, 132 Conn. App. 30, 38, 31 A.3d 55 (2011).

[18] See *Zhou* v. *Zhang*, 334 Conn. 601, 628–30, 223 A.3d 775 (2020) (court may rely on testimony from guardian ad litem in determining best interests of child with respect to custody); *Zilkha* v. *Zilkha*, 180 Conn. App. 143, 177, 183 A.3d 64 (in making custody determination, court is permitted to seek advice and accept recommendations from guardian ad litem, whose role is to act as representative of child's best interests), cert. denied, 328 Conn. 937, 183 A.3d 1175 (2018).

[19] See part I B of this opinion.

[20] Practice Book § 17-4 (a) provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. . . ."

[21] General Statutes § 46b-6 provides in relevant part: "In any pending family relations matter the court or any judge may cause an investigation to be made with respect to any circumstance of the matter which may be helpful or material or relevant to a proper disposition of the case. Such investigation may include an examination of the parentage and surroundings of any child, his age, habits and history, inquiry into the home conditions, habits and character of his parents or guardians and evaluation of his mental or physical condition. . . ."